**Raymond R. BRADY and Raye Corporation**

v.

**The HARTFORD FIRE INSURANCE COMPANY, and William Gutgesell and East Coast Salvage Company, Inc.**

Civ. A. No. M–79–2392.

United States District Court, D. Maryland.

May 28, 1985.

Joseph F. Lentz, Jr., William D. Hooper, Jr., and Lentz, Hooper, Jacobs & Blevins, P.A., Baltimore, Md., for plaintiffs.

Jon H. Grube, John J. Boyd, Jr., Raymond G. Mullady, Jr., and Smith, Somerville & Case, Baltimore, Md., for defendant The Hartford Fire Ins. Co.

George H. Hulse and Hulse & Germano, Burlington, N.J., for defendant William Gutgesell.

James W. Bartlett, III, JoAnne Zawitoski, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant East Coast Salvage Co., Inc.

## MEMORANDUM AND ORDER

JAMES R. MILLER, District Judge.

The trial in this diversity case began on September 27, 1982. On October 12, 1982, this court granted the motion for a directed verdict in favor of Hartford Fire Insurance Co. and William Gutgesell, two of the defendants. The case proceeded against East Coast Salvage Company, and on October 15, 1982 the jury entered a verdict for the plaintiff, Raye Corporation, against East Coast Salvage for $3,411.35. Subsequently, the plaintiffs appealed and the Fourth

Circuit affirmed this court's decision. *See Brady v. The Hartford Fire Insurance Co.*, 746 F.2d 1470 (4th Cir.1984) (unpublished).

All defendants have filed motions for attorney's fees and the plaintiffs have responded.[1] A hearing on the matter was held on February 22, 1985. Counsel for East Coast Salvage and Hartford Insurance Co. were present. Counsel for Mr. Gutgesell did not attend the hearing. The court, after hearing argument, requested supplemental memoranda on the effect of Md. R. 1–341 on this case.

A) *Legal Principles Applicable*

In a diversity case "'where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975) citing 6 J. Moore, Federal Practice ¶ 54.77[2] pp. 1712–1713 (2d ed. 1974). Under Maryland law:

"In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it."

Md.Rule 1–341 (1984).[2]

Although under previous Md.R.P. 604(b) a finding of bad faith or lack of substantial justification mandated an award of attorney's fees, *see, e.g., Hess v. Chalmers*, 33 Md.App. 541, 545, 365 A.2d 294 (1976), the new Md.Rule 1–341 does not mandate the award, but leaves the granting of such award to the discretion of the court. *Compare* Md.R.P. 604(b) *with* Md. Rule 1–341. The initial question for the court, however, is whether 1) the conduct of any party in maintaining the action was in bad faith[3] or 2) whether the action was without substantial justification.

In determining whether a case has been litigated without substantial justification, Maryland appellate courts have reviewed the facts, the law, and the circumstances of each case in which the issue has been raised to ascertain whether there was at least some basis in law or fact for the action of the potential offender.

For example, in denying a motion for reargument on appeal, the Court of Appeals of Maryland commented that although the plaintiff was free to institute a new action under the applicable Maryland statute, that statute did not appear to support the plaintiff's position. The court advised the plaintiff "to be certain before instituting such action that it has 'substantial justification' for the action in order that it may not be ensnared in Maryland Rule 604(b) ... and thus become responsible for 'the reasonable expenses incurred by the adverse party in opposing such proceeding....'" *Clinton Petroleum Services, Inc. v. Norris*, 271 Md. 665, 673, 321 A.2d 528 (1974) (citations omitted).

The plaintiffs in *Singer v. Steven Kokes, Inc.*, 39 Md.App. 180, 384 A.2d 463 (1978),

---

1. Paper No. 87—East Coast Salvage, Motion for Costs & Expenses.
   Paper No. 88, 102, 107—Hartford Insurance, Motion for Attorney's Fees.
   Paper No. 93—William Gutgesell, Motion for Attorney's Fees
   Paper Nos. 95, 96, 98, 110—Plaintiffs' Response

2. Md. Rule 1–341 supersedes Md.R.P. 604(b) which read:
   "In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purposes of delay the court shall require the moving party to pay to the adverse party the amount of the costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceeding, including reasonable attorney's fees."

3. Considering all the facts and circumstances in this case, this court declines to find that the conduct of the plaintiff in maintaining the action was in bad faith.

did become ensnared in Rule 604(b) and were held responsible for opposing counsel's attorney's fees. They argued on appeal that their cause of action "was supported by plausible legal arguments," *id.* at 186, 384 A.2d 463, but the court did not agree stating, "The arguments ... were totally devoid of any merit and in light of the circumstances surrounding this case we can see no basis for setting aside the award of attorney's fees." *Id. See also Suitland Development Corporation v. Merchants Mortgage Co.,* 254 Md. 43, 46, 254 A.2d 359 (1969) (allegations in complaint unsupported by the evidence; evidence completely vindicated each and every defendant of all charges; attorney's fees awarded); *Attorney Grievance Comm'n v. A.S. Abell Co.,* 294 Md. 680, 689–90, 452 A.2d 656 (1982) (defendant's motion raising preliminary objection had no basis in law; attorney's fees award upheld); *Shanks v. Williams,* 53 Md.App. 670, 672–73, 455 A.2d 450 (1983) (plaintiff's attempt to rehash matters already decided was meritless; attorney's fees award upheld).

The Court of Special Appeals has cautioned that " 'without substantial justification' should not be interpreted to mean that the winning party is entitled to counsel fees simply because his opponent misconceived the legal basis upon which he sought to prevail." *Hess v. Chalmers,* 33 Md.App. at 545, 365 A.2d 294. The facts of *Hess* reveal, however, that at least at the time the plaintiff instituted the action there was some justification for doing so.[4]

The plaintiffs, in opposition to the defendants' requests for fees and costs, cite *Dent v. Simmons,* 61 Md.App. 122, 485 A.2d 270 (1985), in which the Court of Special Appeals found that a party presenting a new cause of action to the court should not be penalized by having to pay attorney's fees simply because the cause of action was not recognized in Maryland. In *Dent,* however, the court recognized that the plaintiff's cause of action had been recognized in other jurisdictions, *id.* at 128 n. 5, 485 A.2d 270, had not been rejected specifically in Maryland, *id.* at 128, 485 A.2d 270, and that "[a] litigant ought not to be penalized for innovation or exploration ... unless such exploration is frivolous." *Id.*

In summary, to hold the plaintiffs and/or their counsel responsible for attorney's fees and costs, this court must conclude that there was no basis in law and/or fact to support their claims against the defendants seeking the fees and costs.

B) *This Court's Findings in Brady v. Hartford Fire Insurance*

On October 12, 1982, this court issued a memorandum and order setting forth the reason for its directed verdict in favor of Hartford Fire Insurance Co. and William Gutgesell. In the memorandum the court repeatedly stated that there was no basis in fact or law to support the plaintiffs' case against those two defendants.

Trial began on September 27, 1982, and after five days of hearing plaintiffs' case, as the court stated in the memorandum:

"The theory of the plaintiffs as to liability was finally made clear by the memorandum of law filed with the court on or about October 5, 1982."

(Paper No. 81 at 2).

Regarding that legal argument as to Hartford's liability, the court stated:

---

4. In *Hess,* the plaintiffs were unsuccessful in an action in Anne Arundel County Circuit Court regarding property they claimed to be entitled to in Anne Arundel County. They appealed the trial court's decision. During the pendency of that appeal, they instituted an action in Baltimore County regarding their entitlement to land in Baltimore County asserting the same legal theory as they had argued in the Anne Arundel County Court. While that case was pending, their appeal from the Anne Arundel County case was dismissed as being filed late. 33 Md.App. at 542–43, 365 A.2d 294. The Baltimore County court found, then, that the Anne Arundel County action was res judicata as to the claim before it. *Id.* at 543, 365 A.2d 294. The appellate court found that "[t]he fact they may have been overly confident of their position on appeal and filed the Baltimore County bill of complaint while the appeal was pending, does not mean that it was done 'without substantial justification' within the meaning of Rule 604(b)." *Id.* at 546, 365 A.2d 294.

"Plaintiffs' entire argument as to Hartford's liability is based upon the faulty premise contained in the first sentence of the plaintiffs' memorandum of law under the heading 'Summary of Facts.' There the plaintiffs state that, under the insurance policy, The Hartford had 'the option of declaring the vessel a total loss, or to salvage and repair same.' There is no basis in fact or in law to support such an assertion.

No clause in the policy gives The Hartford the option of declaring the vessel a total loss. Rather, under the law construing such policies, before the vessel owner can recover the full value under the policy as a 'constructive total loss' the owner must first affirmatively abandon all his interests in the vessel to the insurer."

(*Id.*) (citations omitted).

. . . . .

"The cases cited by the plaintiffs in their memorandum of law are factually inapplicable to the present case. The cases cited by the plaintiffs involve the application of state law to automobile or fire insurance policies, all of which contain an express provision giving the insurer a right to undertake repairs on the insured property in lieu of merely paying for the repairs. None of the cases cited by the plaintiffs involve a marine insurance policy where no right to undertake repairs was conferred in the policy."

(*Id.* at 5).

Regarding the plaintiffs' evidence at trial as to Hartford Fire Insurance Co.'s liability, the court concluded:

"Plaintiffs' assertion that The Hartford 'elected' to undertake repairs on the PATTI B and that plaintiffs did not have the right to question the decision, plaintiffs' memorandum at 3, is totally contrary to the facts produced in evidence and the law."

(*Id.* at 6).

. . . . .

"The evidence in this case, however, totally negates any assumption by Hartford of an obligation to repair the vessel. Captain Brady's unsupported conclusory allegation that his role in the repairs of the PATTI B was a mere 'formality' is at odds with the evidence."

(*Id.* at 8).

. . . .

"The assertion in the plaintiffs' memorandum that the plaintiffs demanded that The Hartford pay the full value of the policy 'on several occasions beginning immediately after the sinking of the PATTI B' is totally unsupported by the evidence."

(*Id.* at 6).

. . . . .

"In short, there is no evidence that Hartford breached its contract of insurance, nor any warranty made by it, nor that it assumed any obligation to repair, based on the insurance policy or otherwise."

(*Id.* at 10).

The court in its memorandum also commented on the evidence against Mr. William Gutgesell by stating:

"The plaintiffs have also sued William Gutgesell on the theory that he made certain warranties to Captain Brady or Raye Corporation and that he performed duties assumed by him in a negligent fashion.

There is no evidence that William Gutgesell made any warranties to Captain Brady or to Raye Corporation. He never promised Captain Brady that the repairs would be completed at any particular time. He never warranted the quality of the work of East Coast Salvage Company. He did approve the work on behalf of Hartford, which was done by East Coast Salvage Company, but the evidence is clear that Captain Brady approved it also as the latter had the right to do, on behalf of Raye Corporation, under the contracts signed with East Coast Salvage Company. In any event, it is clear that neither of the plaintiffs had any contractual relationship with William Gutgesell. Captain Brady was

definite in his testimony that he did not look upon William Gutgesell as his representative, but, instead, as a representative of Hartford.

For the reasons previously stated, it is also apparent that Mr. Gutgesell did not himself assume the obligation of repairing the PATTI B. He had no duty to Captain Brady or the Raye Corporation which could possibly form the basis for any liability to them for alleged negligence."

(*Id.* at 10).

The inescapable conclusion regarding the plaintiffs' case against both Hartford and Gutgesell is that it had no basis in law or fact. The plaintiffs may argue that they were attempting to present a new cause of action, but that argument is meritless. As pointed out by this court, the law applicable to the plaintiffs' claims was clear and well settled (Paper No. 81 at 2). If a new cause of action was presented to this court, it was a "frivolous one—*i.e.*, it indisputably had no merit." *Dent v. Simmons*, 122 Md.App. at 128 n. 3, 485 A.2d 270.

Against East Coast Salvage, however, the plaintiffs had a colorable, but very limited, claim. Specifically the court stated:

"As to East Coast Salvage Company, the evidence is clear that Raye Corporation contracted directly with it for the partial repair, as well as for the raising, of the PATTI B. No claim is made in this case that the raising of the PATTI B was done by East Coast in an improper or negligent fashion.

The evidence discloses that Captain Brady on behalf of the Raye Corporation had the right to approve the workmanship and prices of East Coast and that he did so. He inspected the vessel before the final East Coast bill was paid. He approved the concept of awarding the work to East Coast in stages. He conceded on cross-examination that the last stage of the work performed by East Coast, not having been awarded until December of 1978 or January of 1979, eliminated any effect of alleged delay in repairs by East Coast which may have

previously taken place. He produced no evidence to show when the last work was completed by East Coast on the PATTI B, but it is clear that the PATTI B sat for several months in the yard of East Coast after East Coast had completed all of its work.

Raye Corporation, through R & M Welding and Captain Brady, has received payment from Hartford for most of the items which the plaintiffs contend had to be redone by Captain Brady because of alleged improper workmanship by East Coast.

East Coast obviously had no control, under the evidence, over any delays which occurred or the workmanship which was performed in connection with repairs of the PATTI B after Captain Brady ordered the vessel removed to the Camden Ship Repair yard in May, 1979.

Under the evidence in this case, the liability, if any, of East Coast is limited as a matter of law to the items which Captain Brady testified were improperly done by East Coast for which Captain Brady and Raye Corporation have not heretofore received payment by The Hartford."

(*Id.* at 10–11).

■ The jury returned a verdict for plaintiff Raye Corporation in the sum of $3,411.35. Thus against East Coast Salvage the plaintiffs' claim, as limited and defined by the court, had some basis in law and fact.

C) *Fourth Circuit's Findings in Brady v. Hartford Fire Insurance Company*

The Fourth Circuit affirmed this court's decision to grant a directed verdict for Hartford and Gutgesell. In affirming, the court stated, "We agree with the district court that neither the facts nor the law supports [the plaintiffs'] claim." *Brady v. Hartford Insurance Co.*, 746 F.2d 1470, *slip op.* at 3–4 (4th Cir.1984).

■ In summary, both this court and the Fourth Circuit found that there was no basis in law or fact for the claims against

Hartford and Gutgesell. Therefore, this court will exercise its discretion and award reasonable attorneys' fees to those parties.

As to East Coast Salvage, although the plaintiffs misconceived the scope of their claim against East Coast Salvage, there was some justification for that claim. Therefore, East Coast Salvage's request for attorney's fees will be denied.

### D) *Reasonableness of the Fee Request*

Maryland law requires that the award of attorney's fees be reasonable, *see* Md. Rules 1–341, but little guidance is given in Maryland cases regarding reasonableness in calculating the award. Therefore, this court will utilize the procedure adopted by the Fourth Circuit to calculate attorney's fee awards.

■ Pursuant to Fourth Circuit law, the court initially will analyze the time and labor required to determine whether the hours spent were reasonable. It will multiply the hours reasonably spent by a reasonable hourly rate. That figure represents the "preliminary award." *See, e.g., Disabled in Action v. Mayor and City Council of Baltimore*, 685 F.2d 881, 886 (4th Cir.1982); *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981). After determining the preliminary award, the court will use the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), to enhance or decrease the preliminary award, if appropriate. *See Anderson v. Morris*, 658 F.2d at 249. This approach was approved and utilized by the Supreme Court in *Hinsley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### 1) *Hartford's Request*

Hartford has submitted several exhibits to the court which detail the hours spent on this case from January, 1980 to October, 1984 by four different attorneys. Hartford claims that it is entitled to $77,246.99 in attorneys' fees. It appears that $48,988.60 of that amount is compensation sought for fees and expenses of Phillip L. Goldsborough, Esq.; Jon H. Grube, Esq.; John J. Boyd, Esq., and Raymond G. Mullady, Esq. incurred in litigating this matter before this court. The remaining amount, $28,-258.39, is sought for fees and expenses incurred on appeal by Jon H. Grube, Esq.; John J. Boyd, Esq.; Raymond G. Mullady, Esq.; Judith Bollinger, Nicole Popoli, and Angela Beavers, who apparently are paralegals.

■ Initially, because the Fourth Circuit merely affirmed this court's decision without determining whether these defendants should be awarded attorneys' fees pursuant to 28 U.S.C. § 1912 or Fed.R.App.P. 39, this court declines to consider the propriety or reasonableness of the request for attorneys' fees on appeal.

■ After reviewing each item set forth in Exhibit 2, it appears to this court that the 770 hours spent in preparing for and litigating this action before this court are a reasonable expenditure of time. Numerous depositions were taken, and discovery disputes abounded caused by plaintiffs' untimely responses or non-responsiveness to discovery requests. A protracted trial ensued. Although some of the hours tallied reflect time spent dealing with cross claims,[5] those cross claims were directly attributable to the plaintiffs' action and thus are compensable in the opinion of this court.

■ The rates charged for each of the four persons working on the case are also reasonable within this community. Mr. Grube, a partner at Smith, Somerville and Case, charged $70 per hour for 159.2 hours. Mr. Boyd, an associate at the same firm, charged $60 per hour for 494.0 hours and Mr. Mullady, now an associate with the firm, but who at the time of this litigation was a law clerk, charged $25 per hour for

---

**5.** Mr. Gutgesell filed a cross claim for contribution against Hartford (Paper No. 6) which Hartford answered (Paper No. 8). Hartford also considered, but did not file, a cross claim against East Coast Salvage Co. The time spent by Hartford's counsel conferring with East Coast Salvage appears to this court to be related to its defense of the plaintiffs' "repair" claims.

94.4 hours. Mr. Goldsborough, a senior partner in the firm, charged $80 per hour for 22.4 hours of time.

Therefore, the $44,936.00 in attorneys' fees requested appears reasonable. In addition, the $4,052.60 in expenses, which apparently includes travel to Camden, New Jersey to attend depositions scheduled by the plaintiff or to interview witness-employees of East Coast Salvage concerning their knowledge of repairs to the PATTI B, also appears reasonable.

Therefore, the court will turn to the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Those factors include "skill required; contingency of fee; amount involved and result attained; experience and ability of counsel; awards in similar cases ... novelty and difficulty of questions; time limitations...." *Blankenship v. Schweiker*, 676 F.2d 116, 118 (4th Cir.1982).

■ Trial counsel were skilled and experienced and performed well under the confusing circumstances of this case. Once the plaintiffs' legal theories became clear, and that was not until well after the trial began, no novel questions were involved. The case turned on the insurance policy's language and the responsibilities of Hartford under that policy. Those factors are neutral, in this court's opinion.

There is no contingency fee factor to consider.

Comparing this award to awards in similar cases is difficult at best. This case is "similar" to very few before this court. Its length and initial complexity were caused by the plaintiffs' failure to respond to discovery or to clarify the legal basis for their claims. Within the circumstances of this case, the fees requested are particularly appropriate. They need not be enhanced or decreased, however.

### 2) *Gutgesell's Request*

Mr. George Hulse, attorney for Mr. Gutgesell, on March 9, 1985 submitted an affidavit and documentation requesting $20,498 in attorney's fees plus $685.19 in costs (Paper No. 93 Attachment). The plaintiff, by letter of March 13, 1985, objected to the court's considering such documentation arguing that it was untimely filed. The court notes that Mr. Gutgesell's motion for attorney's fees was filed timely and long ago in this case (*see* Paper No. 93). The recent affidavit and documents merely set forth the fees requested, and it is for the court to determine whether the fee request is reasonable within the guidelines set forth by the Fourth Circuit as described *supra*.

This court has reviewed the documentation supporting the fee request. That request shows that George Hulse, attorney for William Gutgesell, spent approximately 179.6 hours at $60 per hour on pre-trial matters. An additional 15.2 hours at $40 per hour in paralegal time were spent in pre-trial preparation. Given the number of depositions taken and the discovery problems which occurred in this case, the time expended appears reasonable as do the hourly rates.

Also reasonable is the request for a fee of $750 per day for each day of trial—*i.e.*, 11 days from the start of trial to directed verdict for Mr. Gutgesell. Finally, post-trial review and filing of attorney's fees motions consumed 14.4 hours of Mr. Hulse's time at $60 per hour. That figure is reasonable.

The rates charged for attorney and paralegal time are inherently reasonable and comparable to the rates charged by attorneys in the community and in this case.

Therefore, the request for $20,498 in attorney's fees represents a reasonable request. In addition, the $615.19 in costs, representing copying costs, Federal Express costs, and reimbursement of expenses of George Hulse, also appears reasonable.

Turning to the *Johnson* factors to determine whether the preliminary award of $21,183.19 should be enhanced or decreased, the court believes that the factors should be applied neutrally. As explained in the previous section of this memoran-

dum, trial counsel were skilled, but no novel questions of law were presented in this case. Within the circumstances of this case, the fee request is appropriate.

### E) *Persons Responsible to Pay Fee Award*

This case was filed on December 27, 1979. It went to trial in October, 1982. After the verdicts were rendered, an appeal was taken. Argument at the Fourth Circuit occurred on April 4, 1984 and that appellate court rendered its decision on October 5, 1984. This court scheduled argument on the attorney fees issue for February 22, 1985.

An issue arose at the hearing on this matter regarding the applicability of Maryland Rule 1–341 in this case. That rule became effective on July 1, 1984 and allows a court to require "the offending party or the attorney advising the conduct or both of them to pay the adverse party ... reasonable expenses, including reasonable attorney's fees incurred by the adverse party...." Md.R. 1–341.

Prior to July 1, 1984, however, attorney fees issues were governed by Md.R.P. 604(b) which did not allude to the imposition of an award against counsel.

On April 6, 1984, however, the Court of Appeals of Maryland, in passing an Order adopting the new Maryland Rules of Practice and Procedure, stated:

"The Rules, Forms and Amendments hereby adopted by this Court shall govern the Courts of this State and all parties and their attorneys in all actions and proceedings, and shall take effect and apply to all actions commenced on or after July 1, 1984, and insofar as practicable, to all actions then pending ..."

As is apparent, Maryland law changed during the pendency of the appeal exposing attorneys to the possibility of having to pay an opponent's attorney's fees. The plaintiffs' attorney argues herein that application of Md.R. 1–341 in this case would be retrospective, inappropriate and not practicable. What is meant by the term "insofar as practicable" has not been addressed in any detail by Maryland courts. In this type of case, however, some guidance can be found in cases from other jurisdictions in which attorney's fees statutes were applied to cases pending at the time the statute became effective.

For example, the civil rights attorney's fees statute, 42 U.S.C. § 1988, has been held to apply to cases pending at the time the statute was passed, *see, e.g., Hutto v. Finney,* 437 U.S. 678, 694 n. 23, 98 S.Ct. 2565, 2575 n. 23, 57 L.Ed.2d 522 (1978), even when the only issue remaining unresolved was the attorney's fees issue. *Rainey v. Jackson State College,* 551 F.2d 672, 676 (5th Cir.1977). As the court pointed out in *Rainey,* Congress had intended that the attorney's fee act apply to all cases, *id.* at 675, and that the general rule is that a court "apply the law in effect at the time it renders a decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 676.

A similar analysis can be applied to interpret the meaning of the order of the Maryland Court of Appeals that the new rules of procedure apply to all actions pending "insofar as practicable." The intent to apply the attorney's fees rule to pending actions is clearly stated in the April 6, 1984 Order of the Court of Appeals.

With that intent in mind, the term "insofar as practicable" can be equated to some extent with the term "unless doing so would result in manifest injustice." Of course, impracticability and manifest injustice are not synonymous terms, but if application of Md.R. 1–341 would unfairly affect rights of an attorney it surely would be impracticable to apply the rule in this pending case. Impracticability describes unwise, imprudent actions.[6] Webster's Third New International Dictionary at 1136

---

6. Impracticability also is defined as an incapability of performing or accomplishing a goal given the means available. That meaning of the term would be applicable in a case in which the application of one of the new rules of Maryland procedure would confuse, complicate, or obstruct the resolution of a case.

(1966). Therefore, the question in this case is whether it would be unwise or imprudent to apply Md. R. 1–341 in this action because to some extent such application would represent an injustice to the attorney herein. For example, if unfair surprise would occur or if an attorney were deprived of a right he previously had under Md.R.P. 604(b), application of Md. R. 1–341 could be deemed impracticable.

■ Unfair surprise can hardly be an issue herein. Attorneys are exposed to sanctions of all kinds when they come before the court and their conduct is deemed improper. Courts possess inherent and statutory power to assess attorney's fees for disobedience of a court order, bad faith litigation, discovery abuses, and delay in litigation, to name a few. *See, e.g., Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Blair v. Shenandoah Women's Center, Inc.*, 757 F.2d 1435 (4th Cir.1985) (unpublished); 28 U.S.C. § 1927; Fed.R.Civ.P. 11; Fed.R.Civ.P. 37; Md.R.P. 406(c) (old rule setting discovery abuse sanctions including imposition of attorney's fee against counsel). It can be no surprise to plaintiffs' attorney that he could be held responsible for his improper conduct before a court. The requirement of payment of attorney's fees has been one way to implement such responsibility and to assist the court in the control of the conduct of litigation. As the Supreme Court has stated, "the power of a court over members of its bar is at least as great as its authority over litigants." *Roadway Express, Inc. v. Piper*, 447 U.S. at 766, 100 S.Ct. at 2464. There can be no unfair surprise in requiring counsel to pay attorney's fees.

The plaintiffs argue that the "creation of a new liability on the part of an attorney" is, in essence, the creation of a new cause of action which, because it is a substantive matter, cannot be applied in this case retroactively.

■ It is true that in matters of substance, laws will not be given retrospective operation. *See Wittel v. Baker*, 10 Md.App. 531, 539, 272 A.2d 57 (1970). This court, however, does not consider the question of who will pay attorney's fees a matter of substance. When a court imposes a rule which is designed to control the conduct of the litigation and the counsel appearing before the court, it is the opinion of this court that such a matter is procedural. Its effect is to "streamline the litigation process by lessening frivolous claims and defenses." Fed.R.Civ.P. 11, Notes of the Advisory Committee on Rule (1983). Imposition of attorney's fees awards against counsel is but one tool in the hands of the court by which it can control its docket.

Thus, even assuming that imposition of attorney's fees against plaintiffs' counsel in this case is a retrospective application of Md.R. 1–341, that rule neither creates a new substantive right in the defendant nor deprives plaintiffs' attorney of a right which existed previously. It affects matters governing this court's power over counsel in a procedural way. It is not impracticable to apply Md.R. 1–341 to this action, pending at the time the rule went into effect.

Other courts have applied attorney's fees rules to sanction conduct which preceded the rules' effective date. In *Herrara v. Farm Products*, 540 F.Supp. 433 (N.D. Iowa 1982), the court summarily addressed the plaintiff's counsel's argument that he could not be held responsible to pay attorney's fees incurred because of his conduct occurring prior to the effective date of 28 U.S.C. § 1927 which established that attorney's fees could be awarded against offending counsel. *Id.* at 436 n. 4. The court found no merit in the argument and awarded fees because the case was pending when the statute became effective.

In *Blair v. Shenandoah Women's Center, Inc.*, 757 F.2d 1435 (4th Cir.1985) (unpublished), the lower court imposed attorney's fees against an attorney for bad faith, dilatory tactics and frivolous legal arguments noting that it had the inherent

power to do so and statutory power under Fed.R.Civ.P. 11. *Id.,* at 1436. Federal Rule of Civil Procedure 11 as amended, the Fourth Circuit noted, did not become effective until after the conduct at issue had occurred. *Id.,* at 1436–1437. The Fourth Circuit emphasized that Rule 11, as amended in 1983, was designed " 'to streamline the litigation process by lessening frivolous claims or defenses.' " *Id.,* at 1437. Although the lower court's finding of bad faith alone could have supported the award of attorney's fees against counsel, the court of appeals did not find fault with applying amended Rule 11 to conduct which preceded its effective date.

Neither of those cases examined the retrospectivity issue, but both cases demonstrate that application of an attorney's fees statute or rule to a pending action is hardly unusual.

█ Therefore, this court concludes that plaintiffs' counsel may be exposed to liability for attorney's fees in this action. Plaintiffs need not bear alone the burden of paying over $69,000 in attorney's fees and costs incurred in protracted litigation which had no substantial justification.

Accordingly, it is this 28th day of May, 1985, by the United States District Court for the District of Maryland, ORDERED:

1) That the motion of Hartford Fire Insurance Company for attorneys' fees and expenses is GRANTED for a total of $48,988.60.

2) That the motion of William Gutgesell for attorney's fees and expenses is GRANTED for a total of $21,183.19.

3) That the award is assessed jointly and severally against Raymond R. Brady, Raye Corporation, and Joseph F. Lentz, Jr., Esquire.

4) That the motion of East Coast Salvage for attorneys' fees is DENIED.

5) That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.