545 A.2d 1345

Yilmaz **YAMANER**

v.

**Irene Ruth ORKIN.**

**No. 178, Sept. Term, 1987.**

Court of Appeals of Maryland.

Aug. 30, 1988.

Albert D. Brault (Janet S. Zigler, Brault, Graham, Scott & Brault, all on brief), Rockville, for appellant.

John J. Sellinger (Barry J. Nace, Paulson, Nace & Norwind, all on brief), Washington, D.C., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

RODOWSKY, Judge.

Certiorari was granted in the instant matter to review an imposition of sanctions under Maryland Rule 1–341 based on the renewal of a motion for summary judgment in a medical malpractice case. The rule reads:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

In order to impose sanctions this rule requires the trial judge to find one or both of two predicates: "bad faith" or "lack of substantial justification." *Century I Condominium Ass'n v. Plaza Condominium Joint Venture*, 64 Md. App. 107, 115, 494 A.2d 713, 717 (1985); *Blanton v. Equitable Bank, Nat'l Ass'n*, 61 Md. App. 158, 161, 485 A.2d 694, 696 (1985). Although unable to reach the merits of this case in an earlier, premature appeal which was dismissed in *Yamaner v. Orkin*, 310 Md. 321, 529 A.2d 361 (1987), we now conclude that neither bad faith nor lack of substantial justification were present. To state our reasons requires a somewhat detailed review of the facts.

Appellee and plaintiff below, Irene Ruth Orkin (Orkin), was admitted to Holy Cross Hospital of Silver Spring, Inc. (Holy Cross) on August 24, 1978, for surgical repair of a perforated gastric ulcer. At 2:55 p.m. on August 25, 1978, Orkin was admitted to the operating room. The anesthesiologist was Yilmaz Yamaner, M.D. (Yamaner), the appellant and one of the defendants below. Following surgery the plaintiff was admitted to the recovery room and later to the intensive care unit where, at about 2:20 a.m. on August 26, Orkin complained of numbness of the right fingers and inability to flex her right wrist. Electromyographic studies were compatible with an injury to nerves in the arm which was most probably caused by pressure on the area under the armpit.

Orkin made claim under the arbitration procedure required by Md. Code (1974, 1984 Repl. Vol.), § 3–2A–01 *et seq.* of the Courts and Judicial Proceedings Article. The arbitration panel entered summary judgment in favor of Yamaner and, after an evidentiary hearing, entered an award in favor of Holy Cross.

Orkin filed her declaration to nullify the award in the Circuit Court for Montgomery County in January 1985 against the hospital and anesthesiologist.[1] Within several months the court set a September 15, 1986, trial date and ordered that all discovery be completed by August 19, 1986. The May 1985 answers to Yamaner's interrogatories identified only Dr. Francis C. Mayle as an expert witness, but reserved the right to file a supplemental answer.

Yamaner moved for summary judgment in February 1986. The motion referred to one page in a 1982 deposition of Dr. Mayle taken in the health claims arbitration proceedings. There Dr. Mayle was asked, "And you have no opinion concerning the care rendered by the anesthesiologist in this case. Correct?" Dr. Mayle answered, "I

---

1. Although the surgeon initially had been joined in health claims arbitration, the claimant had voluntarily dismissed that claim during the arbitration process.

have no opinion on it." Orkin opposed by submitting portions of the same deposition in which Dr. Mayle expressed the view that the injury was caused by malpositioning of the plaintiff's arm, that the anesthesiologist had a duty correctly to position the arm during surgery and that the injury occurred either during surgery or thereafter, while Orkin was still unconscious.

This motion was heard by Judge Richard B. Latham who denied summary judgment.[2] The court concluded that the plaintiff was not necessarily relying on *res ipsa loquitur* and that the total deposition testimony of Dr. Mayle indicated that there were factual issues which precluded summary judgment.

Pursuant to court orders previously entered, the parties were required to file "calendar call" statements shortly before trial. Plaintiff's statement, filed September 3, 1986, listed only Dr. Mayle as an expert witness. Counsel for all parties appeared before the court that day for the calendar call conducted by Judge L. Leonard Ruben. The plaintiff requested and obtained a postponement of the trial date because her principal counsel was engaged in a protracted trial. At the same time the attorney for Yamaner advised that another summary judgment motion was being filed.[3] Shortly thereafter trial was reset for December 1, 1987, with the calendar call scheduled for November 18.

Yamaner's second motion for summary judgment was docketed September 5, 1986. The first seven paragraphs essentially set forth the matters presented in the earlier motion, including the averment, supported by reference to Dr. Mayle's deposition, that he had no opinion concerning

---

**2.** The same law firm has represented Yamaner with respect to the Orkin claim beginning with the health claims arbitration proceedings and continuing through this appeal. One of the attorneys from that firm, other than the attorney who argued this appeal, appeared on behalf of Yamaner before Judge Latham.

**3.** This was the same attorney who had appeared for Yamaner before Judge Latham.

the care rendered by Yamaner. Paragraph eight averred that during the health claims arbitration hearing Dr. Mayle had testified that the injury to Orkin had occurred between midnight and 2:30 a.m. on August 26, 1978. The court was referred to "the attached transcript of Dr. Mayle's testimony, pages 31 and 32." The motion also referred to attached testimony of Yamaner in his arbitration deposition where Yamaner stated that his last contact with Orkin was at 8:00 p.m. on August 25.

Paragraph nine of the motion pointed out that discovery was closed, that no expert other than Dr. Mayle had been named and that there was no supplemental answer to interrogatories "indicating that Dr. Mayle's opinion had changed." [4] The motion argued that because the plaintiff was unable to produce any expert opinion that Yamaner had violated the appropriate standard of care, summary judgment should be entered in Yamaner's favor.

Attached to the motion were copies of four pages of transcript, each unheaded and uncaptioned, and bearing only page numbers. On one page, identified in the motion as part of Dr. Mayle's testimony on direct examination by Orkin's counsel at the arbitration hearing, that physician had stated:

> [A]ccording to the records available and reviewed earlier and now, [Orkin] was able to move her hands, everything was normal as of midnight. And at 2:30 in the morning it's noted that she's complaining about numbness and inability to move the right hand properly. So something happened in that two-and-a-half-hour period.

---

**4.** By this the movant meant that there had been no notice from the plaintiff of a change by Dr. Mayle from the position taken in his testimony at the arbitration hearing. The motion papers never argumentatively made the point that there had been a change in Dr. Mayle's testimony as given at the arbitration hearing from that given in his arbitration deposition. Nor did the second motion expressly make the point that it was only Mayle's deposition testimony that had been relied upon by Yamaner in the motion for summary judgment heard by Judge Latham.

Dr. Mayle further stated that there was pressure against the nerve in Orkin's arm and that whoever was doing the nursing care was responsible for seeing that no such pressure existed.

In response to the motion plaintiff's counsel submitted that it presented nothing new and requested that a $300 counsel fee be assessed against Yamaner.

The second motion was heard on October 8 by Judge J. James McKenna.[5] The court opened the hearing by announcing that

> [t]his is a second Motion for Summary Judgment and I've read through it and I, at least to this extent agree with the Plaintiff, and that is all that's been added to the Motion is Paragraph 8 which fixes the time of exposure of this doctor to this patient and ends it at about 8 o'clock in the evening. I don't know what that has to do with the price of tea and ... why it makes your Motion for Summary Judgment any more efficacious than the original one.

Yamaner's counsel offered to review "a little bit of the background of the case" and the court asked if counsel meant "something that wasn't already argued?" Counsel submitted that "[t]he problem we have had throughout the case ... is that Dr. Mayle does concisely state in his *deposition* that he does not have an opinion with regard to the administration of anesthesiology...." (emphasis added). The court replied, "Yes, but he said that and that was already argued in front of Judge Latham." The court asked, "Is there anything new—any other reason that you've added besides that?" Counsel replied, "Yes" and Judge McKenna said, "Tell me." Counsel then expressed his "understanding" that the trial date continuance was granted on the condition that the discovery deadline would not be opened to allow Orkin to obtain a new expert.

---

**5.** At this hearing Yamaner was represented by an attorney other than the attorney who had argued to Judge Latham and other than the attorney who argued this appeal.

Counsel said he had nothing to add concerning the opinion in the deposition of Dr. Mayle but that the defense was simply seeking to determine whether the plaintiff was being given additional time to locate a new expert. Plaintiff's counsel immediately disclaimed that objective.

The court then asked Yamaner's counsel to address the motion for sanctions. Counsel expressed the "understanding" that at the hearing before Judge Latham plaintiff had sought additional time to obtain another expert. Judge McKenna pointed out, and plaintiff's counsel confirmed, that plaintiff was satisfied with what Dr. Mayle had said and presumably would say at trial. Defense counsel requested time to obtain a transcript of the hearing before Judge Latham to show that sanctions would be inappropriate and to confirm counsel's "understanding." The court granted "$300 of lawyer's fees to [plaintiff's counsel] for being here, because ... he should [not] have been here and put through this again." Judge McKenna further said that if defense counsel could convince him by a transcript of the hearing before Judge Latham "that this was the issue that was not settled before" the sanction would be stricken. On the other hand, Judge McKenna cautioned that

> if it comes in front of me again and there's a third bite of the apple and it turns out that your interpretation of what happened in front of Judge Latham is just flat out wrong again, and [plaintiff's counsel is] dragged in here a third time, then I assume that he'll be asking for more lawyer's fees and I will be somewhat favorably disposed.

Yamaner filed a motion for reconsideration of the summary judgment ruling and of the imposition of sanctions. Attached to the motion was a transcript of the hearing before Judge Latham which did not support the "understanding" expressed to Judge McKenna. Of particular significance for present purposes, however, is the representation in the reconsideration motion that the September 1986 motion for summary judgment "was based on additional factual material obtained subsequent to the hearing on the original motion as well as· the fact that the closing of

discovery precluded the naming of an additional expert." The reconsideration motion for the first time explained to the court that the transcript of Dr. Mayle's testimony at the arbitration hearing had been received while Yamaner's counsel were preparing for trial.

The motion papers averred that "[o]n cross-examination by counsel for Holy Cross Hospital the inconsistency between Dr. Mayle's deposition testimony and testimony at the hearing was explored." Portions of that cross-examination, none of which had been presented to Judge McKenna, were attached as exhibits. The reconsideration motion specifically addressed Dr. Mayle's redirect examination by Orkin's counsel at the arbitration hearing, pointing out that "Dr. Mayle indicated that his opinion had changed from the time of his deposition." In the arbitration testimony attached, Dr. Mayle explained this was "[b]ecause at that time [*i.e.*, on deposition] I had not carefully read all the nursing notes and I have changed my opinion since then."

Judge McKenna denied the motion for reconsideration.

Shortly before trial the parties agreed upon a statement of facts on the basis of which Holy Cross and Yamaner jointly moved for summary judgment. Judge Irma S. Raker heard that motion and granted it in favor of both defendants. She cited *Hans v. Franklin Square Hosp.*, 29 Md.App. 329, 347 A.2d 905 (1975), *cert. denied,* 276 Md. 744 (1976) which concluded that Maryland "rejected the doctrine of *res ipsa loquitur* in actions against physicians and allied health personnel...." *Id.* at 335, 347 A.2d at 909.

The Court of Special Appeals has expressly overruled *Hans* to the extent of its inconsistency with that court's holding in *Brown v. Meda,* 74 Md.App. 331, 537 A.2d 635, *cert. granted,* 313 Md. 9, 542 A.2d 845 (1988). We have also granted Orkin's petition for certiorari in order directly to review the judgment entered by Judge Raker in the instant matter. 312 Md. 661 (1988).

It is apparent from the foregoing review that Yamaner had substantial justification for filing and pressing to ruling

the September 1986 summary judgment motion. To the extent that Judge McKenna hints at bad faith by comments suggesting imposition upon and possible vexation of counsel for Orkin, those suggestions could only have been derived from the erroneous conclusion that there was no substantial justification. Prior to Yamaner's motion for reconsideration of the sanction, the justification for Yamaner's September 1986 summary judgment motion might not have been made as clear to Judge McKenna as it could have been, but substantial justification was plainly spelled out in that reconsideration motion and its supporting exhibits. Rule 1–341 is not intended to penalize a party and/or counsel for asserting a colorable claim or defense. *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 539 A.2d 1173 (1988); *Dent v. Simmons,* 61 Md.App. 122, 485 A.2d 270 (1985). We hold that Judge McKenna erred in failing to strike the sanction.

The denial of a motion for summary judgment is an interlocutory order. *Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 339 A.2d 664 (1975). Thus it is within the power of the trial court later to grant a renewal of a summary judgment motion. As Judge McKenna recognized in principle, there is ordinarily no impropriety in submitting a second motion for summary judgment after a prior motion has been denied where there has been some change of fact or law which substantially justifies the resubmission. *See Joy v. Anne Arundel County,* 52 Md.App. 653, 660–61, 451 A.2d 1237, 1242 (1982), *cert. denied,* 295 Md. 440 (1983); *Mueller v. Payn,* 30 Md.App. 377, 389–90, 352 A.2d 895, 903, *cert. denied,* 277 Md. 739 (1976).

Here Yamaner had two strings to his bow. His legal argument was that *res ipsa loquitur* does not apply in medical malpractice cases. That argument was reinforced by the discovery deadline which passed after Judge Latham's ruling. Arguably there was no opinion of Dr. Mayle implicating Yamaner and Orkin had not produced any other expert. From the standpoint of evidentiary material submitted in the record, the facts on the issue of when the

injury occurred had also changed. The additional use of Dr. Mayle's arbitration hearing testimony arguably eliminated the generality in testimony relied upon by Judge Latham and isolated the time of injury to a period when Yamaner had no responsibility for the positioning of the patient.

We intimate no views on the merits of the rulings on any of the summary judgment motions. We hold only that there was substantial justification for Yamaner's September 1986 summary judgment motion so that any sanction is precluded.

ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY OF OCTOBER 8, 1986 AWARDING ATTORNEY'S FEES IN THE AMOUNT OF $300 AGAINST THE APPELLANT VACATED. EACH PARTY TO BEAR HIS OR HER OWN COSTS.