568 A.2d 856

Howard J. NEEDLE, et al.

v.

WHITE, MINDEL, CLARKE AND HILL, et al.

No. 462, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Jan. 31, 1990.

Melvin J. Sykes, Baltimore, for appellants, Howard J. Needle and Sarah C. King.

Gregory A. Cross (Susan K. Gauvey and Venable, Baetjer and Howard, on the brief), Baltimore, for appellant, Carolyn J. Gerst (Susan Goering, Baltimore, of counsel.)

J. Norris Byrnes (Albert J. Mezzanotte, Jr., Tricia D. O'Neill and Whiteford, Taylor & Preston, on the brief), Towson, for appellees.

Argued before MOYLAN and CATHELL, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge Specially Assigned.

This case involves two appeals in one record from the imposition of sanctions, pursuant to Md.Rule 1–341, by the Circuit Court for Baltimore County. The appellants herein are Carolyn Gerst, the plaintiff in the underlying lawsuit,

and her attorneys, Howard J. Needle and Sarah C. King. The court ordered that Gerst pay the sum of $121,369.14 and that Needle and King pay the sum of $21,748.00 to the law firm of White, Mindel, Clarke and Hill, Samuel D. Hill, and John F. Foley, the defendants in the trial court and appellees herein.

The record establishes that Gerst began working for the appellees in 1970 as a bookkeeper. In March, 1983, she was discharged, according to appellees, because a replacement bookkeeper could do a better job. That her termination was amicable is evidenced by the fact that she received four weeks severance pay, a farewell luncheon, and several letters of recommendation from members of the law firm.

Following Gerst's departure, the appellees discovered that withdrawals in 1982 and the first quarter of 1983 from their escrow savings account totaling approximately $203,-000.00 had not been deposited into the escrow checking account. During the same period $170,000.00 in fees received was deposited in the escrow savings account rather than in the appellees' operating account.

The appellees maintained an employee fidelity policy with the Insurance Company of North America in the amount of $100,000.00. Appellees directed John Foley, a member of the firm, to file a claim for reimbursement. The proof of loss contained an affidavit that the loss resulted from dishonest or fraudulent acts by Gerst.

A condition of recovery under the policy required the appellees to file a complaint with the local police. Appellees filed proof of loss with the insurer and a report to the police on the same day. The full $100,000.00 was eventually remitted to appellees. Detective Henry Wysham testified that he was assigned to investigate the alleged theft, but he could not determine what happened to the money, because he was instructed by an Assistant State's Attorney not to interview Gerst.

Gerst, meanwhile, was charged with embezzlement and she was represented at trial by an assigned public defender.

The principal witnesses testifying on behalf of the State were John Foley and Samuel Hill, both of whom were partners in the law firm. Hill testified that he set up the escrow savings account so that withdrawals were to be by internal paper transfer but never by cash. He denied authorizing cash withdrawals or receiving cash from Gerst, who alleged she withdrew cash from the escrow account at Hill's direction and turned the money over to him.

At the conclusion of the three-day jury trial, Gerst was acquitted. Thereafter, Gerst retained Needle and King, who reviewed the transcript of the criminal trial, interviewed several of the jurors who heard the case, and interviewed Detective Wysham as well as employees of First American Bank where the escrow account was maintained. Gerst paid an initial counsel fee of $9,500.00 with additional fees being contingent upon the outcome of the case.

The court trial focused on Gerst's claims for malicious prosecution and intentional infliction of emotional distress. The trial was preceded by an extensive hearing on appellees' motion for summary judgment which included memoranda by both litigants, numerous exhibits and excerpts of testimony from the criminal trial. Appellees contended that probable cause existed for accusing Gerst of the crime of embezzlement and that appellees' conduct was not so outrageous as to justify an action for intentional infliction of emotional distress. In appellees' view, Gerst's civil action was nothing short of retaliation for the criminal charges. Gerst, conversely, advanced the argument that the criminal charges were motivated solely by appellees' efforts to collect on its employee fidelity insurance policy. The trial court denied the pre-trial motion as to malicious prosecution and intentional infliction of emotional distress and granted it as to four other allegations.

The trial proceeded with Gerst reiterating her previous testimony that all transfers of funds were by written authorization of a partner in the law firm and that all cash withdrawals were returned to Hill. A former employee of

First American Bank testified that withdrawals could be by check or cash during the period in question. Hill and Foley contradicted Gerst's testimony regarding cash withdrawals and receipt of cash from her.

At the close of Gerst's case, appellees again moved for judgment which the court denied. The court pointed out that the appellees could be liable "if there was evidence, considered in the light most favorable to appellants, that some member of the law firm made a report to the Baltimore County Police knowing that the report was recklessly made with a high probability that emotional distress would result" and, the court added, "in fact, emotional distress has resulted, given the testimony of Dr. Bills, who said, you know, how terrible it's been on Miss Gerst, if that's believed."

Appellees' case included further attacks on Gerst's credibility by presenting evidence that she cashed checks that were to be used to maintain the appellees' postage meter and kept the cash; that she sought to purchase a house that required a $30,000.00 down payment; that she spent large sums of money purchasing lottery tickets; that her lifestyle was inconsistent with her earned income of $265.00 weekly; and that she had fraudulently received unemployment compensation benefits.

The issues in this case were whether the appellees instituted a criminal proceeding against Gerst without probable cause for a purpose other than bringing an offender to justice, and whether the appellant suffered emotional distress therefrom. The appellees' defense was twofold: that it did not act maliciously or recklessly in reporting the theft, and that the evidence amassed through pre-trial discovery clearly established that Gerst stole the money.

Appellees' introduction of evidence discovered after Gerst's acquittal in the criminal case was objected to by Gerst's counsel, who maintained that probable cause in making the accusation of theft should be restricted to the known facts as of the time the accusation was made. The

court overruled the objection and admitted the later discovered evidence.

The appellees renewed their motion for judgment at the conclusion of all of the evidence; the court reserved ruling and submitted the case to the jury on issues. The jury decided that appellees had a reasonable belief that Gerst took the money, and that appellees did not report the matter to the police with ill will or with a reckless disregard for the truth. Interestingly, issue 3, submitted over objection by Gerst, asked whether Gerst stole money from appellees. The jury decided that she did not. The jury found that Gerst suffered from emotional distress, that it was not severe, and that a causal connection existed between the filing of the police report and Gerst's emotional distress. Based upon the responses by the jury, judgment was entered for the appellees.

The jury verdict was returned on Friday, September 16, 1988. The court, *sua sponte*, scheduled a sanctions hearing for the following Thursday, stating:

I am scheduling a hearing on Thursday, September 22nd at 3:30 p.m. on the issue of Rule 1–341, bad faith and unjustified proceedings. At that time I would appreciate Mr. White or Mr. Byrnes providing me with lists of all expense, attorney's fees incurred since the filing of this action. All right. That concludes the case.

As we shall see, rather than concluding the case, the court's action merely set the stage for phase two of the battle.

On December 16, 1988,[1] the court filed a 21–page Memorandum Opinion and Order imposing the monetary sanctions which are the subject of this appeal. The court made post-trial findings of fact which we shall summarize as follows:

---

**1.** The appellants Gerst, Needle and King, requested a postponement to establish the specifics of the charges facing them and to seek separate counsel. The request was denied and the hearing proceeded as scheduled with Needle and King representing Gerst and themselves.

The court found as a fact that when John Foley made the police report on behalf of the law firm it "was not done with ill will or hostility or lack of good faith or reckless disregard for the truth." Referring to the disputed testimony over Gerst's spending habits, the trial court found as a fact that "after having had the opportunity to see and hear the witnesses, that the plaintiff spent approximately $1,000 to $1,500 per week in cash during the 1982 through March of 1983 period despite the fact that she had a cash income of only $275.00 per week."

Addressing the issue of emotional distress, the court said: "The facts clearly and convincingly established that the plaintiff never suffered from any disabling emotional distress. Nevertheless, the court finds that the plaintiff's attorney did have good reason to believe that the plaintiff had emotional problems as early as November of 1985."

Concluding its fact finding, the court opined:

"After reading the extensive pleadings ... and ... documentation which takes up four file folders, listening to every witness over the eight days that the trial took and again reviewing the 58 exhibits introduced ... the court is clearly convinced that this suit was brought by the plaintiff because of her ill will and hostility toward White, Mindel, Clark & Hill, Samuel Hill and John Foley. Further, that she felt that she had nothing to lose by bringing this suit but believed that if she were successful she could reap a windfall from the defendants. This court finds as a fact that this suit was brought and continued in bad faith and without substantial justification. The plaintiff knew that this action was frivolous. In addition, this court is clearly convinced that at the very latest, when the case was called for trial on September 6, 1988, the plaintiff's attorneys knew that there was no evidence to support the plaintiff's allegations. Further, they knew or reasonably should have known that there was no justification in continuing this litigation and causing the defendants to incur additional defense costs.

Aside from "hindsight," which we address later, some of the court's findings adopt the version of a particular witness or witnesses over the testimony of others, or its findings are contrary to the responses of the jury on the issues, or it adopts a conclusion where more than one inference is presented by the testimony.[2]

The appellants raise a number of issues including denial of due process in scheduling the sanctions hearing; whether the standard of reviews in Rule 1–341 cases ought to include an independent review by the appellate court; and whether the sanctions imposed amount to an abuse of discretion. We shall limit our review to the single issue:

Is the trial court's decision clearly erroneous?

Rule 1–341 Bad Faith—Unjustified Proceeding

In any civil action, if the court finds that the conduct of a party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable attorney's fees incurred by the adverse party in opposing it.

The objective of the Rule is to fine-tune the judicial process by eliminating the abuses arising from the tendency of a few litigants and their counsel initiating or continuing litigation that is clearly without merit. The inherent danger in the process is that over zealous pursuit of the objective may result in what the Court, in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2nd Cir.1985), described as "stifling the enthusiasm or chilling the creativity that is the very lifeblood of the law."

---

**2.** We note that the court allegedly talked to the jury off the record after the case ended. Appellants obtained affidavits of several jurors relating to the testimony of various witnesses who participated in the trial. Arguably, the role of the jury ought to end with its verdict. Satellite litigation is a matter that the court and counsel should resolve without seeking the thought processes of the trier of fact.

Although Rule 1–341 was adopted in 1984, our appellate courts have addressed the rule in at least six cases in 1988 alone. *Watson v. Watson,* 73 Md.App. 483, 534 A.2d 1365; *Legal Aid v. Farmer,* 74 Md.App. 707, 539 A.2d 1173; *Legal Aid v. Bishop's Garth,* 75 Md.App. 214, 540 A.2d 1175; *Allnutt v. Comptroller of the Treasury,* 77 Md.App. 424, 550 A.2d 728; *Yamaner v. Orkin,* 313 Md. 508, 545 A.2d 1345; *Newman v. Reilly,* 314 Md. 364, 550 A.2d 959.

Sanctions imposed upon litigants and counsel pursuant to Rule 1–341 were upheld in two of the above cases and reversed in four. In *Watson,* sanctions were upheld where fraud was clearly established. Likewise, in *Allnutt,* sanctions were imposed where the attack on the validity of state personal income tax laws lacked substantial justification in view of a plethora of cases rejecting the same argument. Sanctions imposed were reversed on appeal in: *Farmer,* where a $900.00 attorney fee was imposed against attorneys for taking a "frivolous appeal" from a District Court order favoring a landlord in a landlord-tenant dispute; *Bishop's Garth,* where the trial judge assessed a counsel fee of $9,691.00 after concluding that "it became clear during the trial that the defendant's case (an evicted tenant) was totally without merit"; *Yamaner,* where the court granted a $300.00 fee against a party filing a second motion for summary judgment; and *Newman,* where sanctions of $21,-165.05 were approved by the trial court which held that a plaintiff lacked substantial justification to pursue in court a malpractice claim where the plaintiff admittedly had no expert witnesses to testify as to his condition when he was involuntarily committed for treatment of a mental disorder.

The cases make clear that the principle we stated in *Dent v. Simmons,* 61 Md.App. 122, 124, 485 A.2d 270 (1985) (Alpert, J.), is to be zealously guarded. That principle confirms that:

[F]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a *colorable* claim must be allowed to

assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties.

In *Newman, supra,* the Court of Appeals (Rodowsky, J.), citing both *Yamaner* and *Farmer, supra,* reiterated that Rule 1–341 is not intended to penalize a party and/or counsel for asserting a colorable claim or defense. *Ibid.* 314 Md. at 380, 550 A.2d 959.

### Needle and King

■ The trial court held that as of the start of the trial Needle and King knew that there was no evidence to support Gerst's allegations and, therefore, there was no justification in continuing the litigation. At the outset of the case Needle and King knew the following:

a. That a direct conflict existed between Gerst and her accusers as to whether cash withdrawals were permitted and, if so, whether their client or a member of the firm took the money.

b. That a representative of the bank would dispute the law firm's allegation that cash withdrawals were prohibited.

c. That Gerst was acquitted of the crime of embezzlement.

d. That if Gerst did not take the money, some other person in the law firm must have done so and, under that scenario, the named defendant and the law firm were chargeable with falsely accusing Gerst with the theft.

e. That the law firm filed its police report and claim for reimbursement on its employee dishonesty policy on the same day and that the policy did not cover members of the firm.

f. That its research of the law restricted evidence of probable cause in initiating the charges of theft to the facts known by the law firm at the time the accusations were made.

g. That Gerst had paid a substantial retainer in order that her case be presented in court.

The appellants herein, Needle and King, testified at the sanctions hearing that they believed Gerst's protestations of innocence to be "sincere" and "consistent." A subjective belief in one's client, standing alone, should not be a bar to the imposition of sanctions. Where that belief is supported by articulated facts supporting the subjective opinion, however, the rule is otherwise. The federal courts, in order to reduce satellite litigation, have adopted an objective standard holding that sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted at trial. *See Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2nd Cir.1985). Counsel's justification for initiating or continuing a suit, moreover, does not and was never intended by Rule 1–341 to require an attorney to pass judgment on the credibility of his client under the threat of a monetary sanction in the event that either a jury or judge arrives at a different conclusion as to credibility. Substantial justification is established where the legal position taken by counsel is "fairly debatable." *Newman v. Reilly, supra. See also* ABA Section of Litigation, *Sanctions* (2d Ed.1988) stating:

monetary sanctions against an attorney should not turn on whether a court or jury later believes that the client lacks credibility; Comment to Rule 3.1 of the Rules of Professional Conduct (action by lawyer does not lack substantial justification even if lawyer "believes that the client's position ultimately will not prevail").

We hold that by either an articulated subjective belief or by a more rigorous objective standard, Needle and King could not reasonably be held to have proceeded without substantial justification on September 6, 1988.

The trial court also charged Needle and King with bad faith in proceeding to trial. The Supreme Court has characterized "bad faith" as actions that are maintained "vexatiously, wantonly or for oppressive reasons." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), cited in *Watson v. Watson, supra.*

Although Maryland appellate courts have not, to our knowledge, defined "bad faith" under Rule 1–341, the few cases addressing the issue indicate that only egregious behavior will support such a holding. *See Watson, supra* (fraud); and *Miller v. Miller,* 70 Md.App. 1, 519 A.2d 1298 (1987) (obstructive and dilatory tactics bordering on contemptuous conduct).

We hold that where the underlying action presents a colorable claim, as it does here, Rule 1–341 sanctions are improper. We concede that a trial court has inherent power to impose sanctions for continuing an action vexatiously, wantonly, or for oppressive reasons. Such action, however, requires clear evidence that the action is entirely without color and taken for other improper purposes amounting to bad faith. On the facts of this case and the inferences deducible therefrom, bad faith is not clearly established.

### Gerst

The trial court charged Gerst with proceeding without justification and in bad faith, making no distinction between her actions and those of her counsel. Whether substantial justification is established for initiating or continuing a lawsuit involves an analysis of the adequacy of legal arguments, theories of recovery, evidentiary considerations, and other decisions requiring the expertise of trained professionals. Judicial review in this area, therefore, is more appropriately addressed to the actions of attorneys than to their clients. Gerst could not reasonably be expected to understand and evaluate her chances of proving the necessary elements of malicious prosecution and intentional infliction of emotional distress.

The test of substantial justification under Rule 1–341 is that the legal position asserted be "fairly debatable"; that is an attorney's call. To the extent that the trial court ascribed any legal deficiencies in that call to Gerst, it erred.

Clearly, the trial court's primary basis for sanctioning Gerst was for what the court perceived as bad faith in initiating and pursuing her claims. The court concluded:

This suit was brought ... because of her ill will and hostility toward White, Mindel, Clark & Hill, Samuel Hill and John Foley ... she had nothing to lose ... but believed that if she were successful she could reap a windfall from the defendants.

The court concluded that Gerst did not prove either lack of probable cause or improper motive in support of her malicious prosecution count, and did not prove intentionally reckless and outrageous conduct as would support intentional infliction of emotional distress.

Gerst established that she had been criminally prosecuted and that the appellees initiated the complaint. She proved that the criminal proceeding terminated in her favor. As to the absence of probable cause for the prosecution, there was evidence from which the jury could conclude that at the time the police report was made the only evidence pointing to Gerst was that she was the bookkeeper charged with the responsibility of maintaining the three accounts. Finally, there was evidence, if believed, that the law firm's purpose in naming Gerst as the prime suspect was to recover on the fidelity bond which was payable only if the loss was attributable to an employee. Thus, the elements of malicious prosecution were, *prima facie* raised; whether the trier of fact accepted or rejected Gerst's claim on these facts is not the issue.

The same reasoning applies to the claim for emotional distress. Gerst testified to her condition, and her psychologist described her physical and psychological reaction to the criminal proceeding. More importantly, the trial court denied appellees' motion for judgment on the emotional distress issue; the jury concluded that Gerst suffered emotionally and that her emotional distress was caused by the appellees' actions. Whether that distress was severe and whether the appellee acted "with deliberate disregard of a high degree of probability that emotional distress would result," and whether such action was "extreme and outrageous" were for the jury to determine.

## The Law and the Court

The controlling principles in Rule 1–341 cases were enunciated in *Legal Aid Bureau v. Bishop's Garth Associates Limited Partnership*, 75 Md.App. 214, 540 A.2d 1175 (1988), in an opinion by Chief Judge Gilbert. At issue in that case was a sanction order against counsel imposed by the trial court. The balance of credibility weighed heavily against Legal Aid's clients. Following a two-day trial the jury deliberated only 27 minutes before returning its verdict for Bishop's Garth. The jury foreman later indicated that the jury decided the case within 5 minutes but did not return to the courtroom for an additional 22 minutes "out of embarrassment for the defense."

There was evidence that Legal Aid's counsel informed Bishop's Garth that "we intend to seek a trial in this matter (eviction of a tenant). And that's going to be very expensive for you, just in attorney's fees alone. And you also know that we can drag this thing out for some time." *Id.* at 219, 540 A.2d 1175. Following the trial, Bishop's Garth filed a Motion for Attorney's Fees. The trial judge heard evidence on the motion for two days and ordered Legal Aid to pay attorney's fees totaling $9,691.00 to Bishop's Garth.

In his Memorandum Opinion and Order the trial judge said, "I had the opportunity to evaluate the Plaintiff's and Defendant's cases. It became clear during the trial that the Defendant's case was totally without merit." *Id.* at 222, 540 A.2d 1175. We reversed. Lack of substantial justification, we said, may not be determined from the vantage point of judicial hindsight.

Trial counsel's role, we emphasized, is that of an advocate, not trier of fact or judge. It follows, therefore, that as a matter of law, a reasonable basis for believing that a case will generate a factual issue for the fact-finder at trial provides substantial justification for initiating or defending an action. *Bishop's Garth* is a specific application of the general principle that one need only assert a

colorable claim or defense to escape Rule 1–341 sanctions. *See Dent v. Simmons, supra.*

■ The Comment to Rule 3.1 of the Maryland Lawyers Rules of Professional Conduct, cited in *Bishop's Garth,* states in part:

The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

75 Md.App. at 221–22, 540 A.2d 1175.

The best evidence that Gerst had a *colorable* claim, and that the issues of bad faith and substantial justification in pursuing her claim were "fairly debatable," is patent in that the jury found that she suffered emotional distress occasioned by the appellees' actions and that she did not steal any money from the appellees. As we said earlier, the fact that her emotional distress was determined to be "not severe" is beside the point.

The federal courts, like the appellate courts in Maryland, have taken a cautious approach to claims for sanctions grounded upon issues of credibility. In *Oliveri v. Thompson,* 803 F.2d 1265, 1271 (2d Cir.1986), sanctions were imposed against counsel for "instituting and continuing the prosecution of meritless claims after it became apparent they were without a factual or legal basis." The claimant was seeking damages for malicious prosecution and use of excessive force in his arrest. Before trial, claimant's counsel knew that the police had a taped conversation in which

the claimant discussed setting up a drug sale and that a photograph taken shortly after his arrest showed no evidence of the facial injuries he allegedly sustained when arrested. In reversing the sanctions against counsel, the court concluded that the strength of the evidence against the claimant did not preclude submitting the case to a jury. The Court said;

> In imposing Rule 11 sanctions,[3] the court is to avoid hindsight and resolve all doubts in favor of the signer.... Heavily coloring the district court's decision ... we suspect, was its conclusion that he was "unworthy of belief and his testimony was incredible." ... It goes too far, however, to impose monetary sanctions on an attorney on the ground that his testimony was not worthy of belief....

*Id.* at 1275.

The cock did not begin to crow in this case possibly because the appellees were not thrice denied.[4] The court denied appellees' motion for judgment twice and reserved its ruling the third time. After the verdict was harkened, the court, exercising its perceived power to engage in judicial hindsight, stated that it should never have permitted the case to continue and *sua sponte* embarked on the sanctions phase of the trial. That the result of the sanctions hearing was predictable is evidenced by the fact that the appellees, who had not requested sanctions at the time, were advised to prepare a list of their expenses for presentation at the sanctions hearing.

The trial court paid little, if any, heed to the fact that two separate jury panels concluded that Gerst did not steal the money missing from the appellees' accounts. Instead, the

---

3. F.R.C.P. Rule 11 requires counsel to certify that the pleading, motion, or other paper filed is well grounded in fact and is warranted by existing law or a good faith argument for the modification, extension or reversal of existing law and is not interposed for any improper purpose.

4. *John* 18:15–27.

court concluded that appellant spent from $1,000 to $1,500 per week in cash during 1983 and the early part of 1983 despite evidence to the contrary, and that transfer of funds from the appellees' escrow savings account was to be accomplished as paper transactions with no funds ever leaving the bank, which was disputed by neutral bank witnesses. The court's conclusion that Gerst had nothing to lose, moreover, is refuted by the testimony that she had paid $9,500.00 to her attorneys in advance of trial. These findings, "after having the opportunity to see and hear the witnesses," are classic examples of judicial hindsight proscribed by *Bishop's Garth.*

Whether this case went forward, or ended before it started, was the trial judge's call. The appellees' thorough and well documented argument in support of their pretrial motion for summary judgment was denied by the court. *That* ruling forced the case to trial. The denial of the motion, furthermore, establishes that the court recognized that there were disputed questions of fact presented by the pleadings that precluded the court from granting appellees' motion as a matter of law. Having recognized Gerst's right to proceed, the court cannot thereafter decide that the case was *brought* and *pursued* in bad faith and without substantial justification. Clearly, sanctions may arise during the course of a trial warranting the imposition of sanctions at the conclusion thereof irrespective of whether the one sanctioned is a winner or loser. Dilatory tactics, for example, or abusive conduct, or disregard of rulings by the court could result in some form of sanctioning, but there is no allegation of misconduct alleged herein.

Although the court ultimately concluded that Gerst did not prove her case, we cannot overlook the fact that the court decided three times that the evidence was sufficient that the granting of a motion for summary judgment may have been error. If the evidence was sufficiently debatable to deny the motions throughout the trial, it was sufficient to justify Gerst in bringing and continuing the case. We hold,

therefore, that the trial court's imposition of sanctions was clearly erroneous.

It is unnecessary that we consider the appellants' claims of denial of due process in the scheduling of the sanctions hearing. For the court's guidance in future Rule 1–341 cases, we suggest:

■ 1. It may well be an abuse of discretion to impose a substantial monetary sanction on a litigant without first determining the financial ability of the litigant to pay the amount assessed. *See In Re Ruben,* 825 F.2d 977 (6th Cir.1987) (litigant assessed $36,159.21 for attorney fees and cost); *Oliveri v. Thompson, supra.*

■ 2. Constitutional due process is applicable to the assessment of attorney's fees for litigation misconduct. Fair notice and an opportunity for a hearing on the record should be provided. *See Talley v. Talley,* 317 Md. 428, 564 A.2d 777 (1989), and cases cited therein. An inherent problem arises in a sanction hearing addressed to both a claimant and counsel where, as here, they are not separately represented. A conflict of interest is foreseeable where both client and counsel may be pitted against each other in defending against Rule 1–341 sanctions. At a minimum, a trial court should set forth the specific underlying charges of bad faith and lack of substantial justification and allow a reasonable time to each party charged to prepare a defense and obtain separate counsel.

This case concluded on a Friday and the sanctions hearing was set for the following Thursday. Eliminating the two-day weekend and a religious holiday, the appellants had two days in which to prepare a joint defense. Considering the extensive litigation and the very substantial expenses generated therefrom, we think the trial court's refusal to allow additional time to prepare a response was an abuse of discretion.

This case is yet another example of the ever increasing request for sanctions at the close of civil trials. The judicial process is as much abused by wholesale requests for sanc-

tions hearings as it is by conducting judicial proceedings in bad faith or without substantial justification. Rule 1–341 was not designed to provide another bite of the apple and sanctions cannot rest upon the individual perturbations of trial judges.

In *Oliveri v. Thompson, supra,* the court recognized the need for caution in sanction hearings when it observed that courts should be sensitive to the impact of sanctions on attorneys. They can be economically punishing as well as professionally harmful. Beyond that, unjustified sanction orders chill legitimate advocacy and erode the confidence of otherwise competent and ethical counsel. Appellate reversal, moreover, cannot erase the lingering doubts of legitimacy that sanction proceedings generate.

Unfortunately, a highly respectable law firm has been exposed to some degree of taint notwithstanding that it successfully defended the charges it faced. Equally unfortunate are Needle and King, who have ultimately prevailed with regard to sanctions imposed, but suffered from the allegations made. In short, there are no winners, which underscores the necessity that counsel seek sanctions only where a claim is clearly meritless and trial judges accept the premise that Rule 1–341 "is an extraordinary remedy intended to reach only intentional misconduct." *Talley v. Talley, supra,* at 438, 564 A.2d 777. As the Supreme Court made clear in *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421–22, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978), a trial court should:

> ... resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable....

482

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.