609 A.2d 370

**ART FORM INTERIORS, INC., et al.**

v.

**COLUMBIA HOMES, INC., et al.**

**No. 1806, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

July 13, 1992.

588

John H. Doud, III, Baltimore (John M. Robinson, Frederick, on the brief), for appellants.

Bradford I. Webb (Arvin E. Rosen, Siskind, Burch, Grady & Rosen, Baltimore, and Alan L. Winik, Frederick, on the brief), for appellees.

Argued before MOYLAN, ROSALYN B. BELL and DAVIS, JJ.

DAVIS, Judge.

This appeal represents the outgrowth of a construction contract dispute between Columbia Homes Inc. (CHI), a general contractor in Frederick County, Maryland, and Art Form Interiors Inc. (Art Form), a carpentry subcontractor. As a consequence of litigation in that dispute, the lower court ultimately granted a Motion for Sanctions against John Robinson (Robinson), the attorney representing Art Form, and awarded attorney's fees to the opposing side. It is from the award of attorney's fees that the appellants now bring their appeal.

## FACTS

On October 10, 1989, Art Form, a West Virginia corporation, filed a complaint in the Circuit Court for Frederick County, alleging that CHI breached its contract by "failing to make payment of amounts earned under the Contract for materials provided and services rendered." Art Form, which claimed that it performed carpentry services for CHI in the summer of 1988 during construction of a town house development, averred in its complaint that the total amount of its undertaking under the contract was $18,398.65, of which $8,786.15 remained unpaid.

CHI filed an answer to the complaint on December 1, 1989, in which it stated that Art Form did not perform the work it claimed it had done and that the total value of the work done by Art Form was only $10,747, of which Art Form was paid $9,612.50. CHI also alleged that it discovered "numerous defects in the work as done by [Art Form]" and that it hired someone else to "correct those defects."

In order to prepare for trial, Art Form sought to conduct discovery but was unsuccessful. On March 30, 1990, Art

Form filed a Motion for Sanctions Upon Failure to Provide Discovery. Its motion was granted on May 8, 1990, and the court gave CHI twenty days to provide the requested discovery. When CHI still did not respond to the discovery request, Art Form filed a Motion for Entry of Default Judgment on June 6, 1990. Art Form's motion was granted, and an order for default was entered against CHI on June 7, 1990. The order was filed June 8, 1990. On November 26, 1990, a hearing was held, at which both parties were present and represented by counsel, and the lower court entered judgment in favor of Art Form in the amount of $5,576.15.

On January 7, 1991, Art Form filed a Request for Production of Documents in Aid of Execution and Interrogatories in Aid of Execution. When the corporation received no response from CHI, it filed a Motion for Order Compelling Discovery on February 15, 1991, which the court granted on March 18, 1991.[1] The court gave CHI until April 15, 1991 to comply with the order, but compliance was not forthcoming.

Finally, on April 17, 1991, Art Form filed a Petition for Contempt against CHI; Arvin Rosen (Rosen), as CHI's resident agent; Bradford Webb (Webb), as CHI's attorney; and David Mathias (Mathias), as director and president of CHI. On April 19, 1991, the lower court (Dwyer, J.) entered a Show Cause Order against CHI, Rosen, Webb, and Mathias and set a hearing for June 20, 1991. The record reflects that the appellants requested service of the Show Cause Order on April 23, 1991 and that it was served by private process on May 7, 1991. On April 22, 1991, Rosen sent a letter to Mathias resigning as CHI's resident agent.

On May 21, 1991, CHI filed a motion seeking sanctions against Art Form and/or Robinson on the ground that Art

---

**1.** The lower court's Order stated that the *"Defendant* be, and it hereby is, required to provide the discovery sought by Plaintiff on or before April 15, 1991." (Emphasis added.)

Form's Petition for Contempt was filed in bad faith and without substantial justification. The motion averred that neither Rosen, as CHI's resident agent, nor Webb, as CHI's attorney,[2] could be held in contempt for any failure by CHI to respond to the court's order compelling compliance with discovery and that Robinson/Art Form was attempting to use Rosen and Webb to gain advantage in the legal battle with CHI. Neither Rosen nor Webb had been named as defendants in Art Form's suit against CHI.

CHI filed its Motion for Sanctions pursuant to Maryland Rule 1–341, which states:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was *in bad faith or without substantial justification* the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it. [Emphasis added.]

On June 5, 1991, Art Form filed a response to the appellees' motion and withdrew its Petition for Contempt "in light of the Answers to Interrogatories and Response to Request for Production of Documents in Aid of Execution filed by Defendant on or about April 30, 1991 and the Amended Answers to Interrogatories filed on or about May 13, 1991."

A hearing on the appellees' Motion for Sanctions was held June 20, 1991. The circuit court (Dwyer, J.), ruling that the issue of the Petition for Contempt was moot, granted the motion on the ground that Robinson lacked substantial justification, not for filing the Petition for Contempt but for

---

**2.** Testimony in the transcript of the June 20, 1991 hearing revealed that Webb, by operation of law, no longer was CHI's attorney after December 1990.

proceeding with service of the Show Cause Order against Rosen and Webb.[3]  The court thereupon rendered its findings of fact.

Upon rendering its findings, the lower court allowed attorney's fees of $2,645 for services [4] rendered after April 18, 1991 when Rosen and Webb, both of whom are Baltimore attorneys, sent the circuit court a letter, a copy of which was forwarded to Robinson, stating that they were "not aware of any statutory or case law which subjects a resident agent or an attorney to liability for contempt upon failure of a corporate defendant to comply with an order compelling discovery."  At the hearing, the court said: "[I]t's the letter of April 18th itself which triggers the finding of lack of substantial justification.  That letter, in and of itself, and the research for that, would not be part of it [the computation of attorney's fees]."

In his appeal, Robinson advances two claims of error:

I.  Whether the trial court was clearly erroneous when it found that there was no substantial justification for continuing to process the Petition for Contempt by sending the Show Cause Order to Baltimore on April 23, 1991 for the service of that Order which occurred on May 7, 1991.

II.  Whether the trial court abused its discretion when it awarded any damages in this case.

Because we find the lower court was clearly erroneous in imposing sanctions and accordingly reverse its judgment, we do not reach the second issue presented in this appeal.

---

**3.**  Testimony at the hearing disclosed that, on April 16, 1991, Robinson learned that CHI had had its charter revoked on October 10, 1990.

**4.**  Alan Winik, Rosen, and Webb all worked for the Baltimore firm of Siskind, Burch, Grady and Rosen.  The court awarded $450 in attorney's fees for the services of Winik, who represented Rosen and Webb at the June 20 hearing;  $300 for Webb's time spent preparing for the hearing;  $1,065 for Rosen's services;  $750 for the services of their law clerk;  and $60 for the services of their paralegal.

## DISCUSSION

The Court of Appeals set forth in *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 596 A.2d 1049 (1991), the standard of appellate review that should be applied when a lower court has imposed sanctions under Maryland Rule 1–341. A court *"may"* impose sanctions upon a party or the attorney advising the conduct or both "if the court finds that the conduct of any party in maintaining ... any proceeding was in bad faith or without substantial justification." Rule 1–341 (emphasis added). As the Court explained, the awarding of attorney's fees as sanctions can occur only upon the satisfaction of a two-prong test:

> If the judge makes the requisite finding that a litigant acted in bad faith or without substantial justification, the judge should not automatically impose sanctions. After finding bad faith or lack of substantial justification, the judge should then exercise discretion in deciding, in light of those findings, whether costs and/or attorney's fees should be awarded.

*Inlet,* 324 Md. at 266, 596 A.2d 1049.

In contrast to Rule 1–341's predecessor, Rule 604 b, which "made sanctions mandatory after a finding of bad faith or lack of substantial justification," *Inlet,* 324 Md. at 267, 596 A.2d 1049, the award of attorney's fees as sanctions under Rule 1–341 is *not mandatory* despite the fact that the judge may have found that the attorney or the offending party acted in bad faith or without substantial justification. Before sanctions can be imposed "in the form of costs and/or attorney's fees under Rule 1–341, the judge must make *two separate findings* that are subject to scrutiny under two related standards of appellate review." *Inlet,* 324 Md. at 267, 596 A.2d 1049 (emphasis added).

> First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith

and/or lack of substantial justification merits the assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Id.* at 267–68, 596 A.2d 1049.

The test for determining lack of substantial justification is "whether [the offending attorney or party] had a *reasonable basis* for believing that the claims would generate an issue of fact for the fact finder." *Id.* at 268, 596 A.2d 1049 (emphasis added). We stated similar sentiments in *Needle v. White,* 81 Md.App. 463, 476, 568 A.2d 856 *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990) (emphasis added): "[A] *reasonable basis* for believing that a case will generate a factual issue for the fact-finder at trial provides substantial justification for initiating or defending an action."

The "bad faith" referred to in Rule 1–341 is defined as acting "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet,* 324 Md. at 268, 596 A.2d 1049. *See Roadway Exp. Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488, 501 (1980); *Jenkins v. Cameron & Hornbostel,* 91 Md.App. 316, 604 A.2d 506 (1992); *Johnson v. Baker,* 84 Md.App. 521, 581 A.2d 48, *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991).

■ The purpose of Rule 1–341 is to "fine-tune the judicial process by eliminating the abuses arising from the tendency of a few litigants and their counsel initiating or continuing litigation that is clearly without merit." *Needle,* 81 Md.App. at 470, 568 A.2d 856. When a lower court contemplates the issue of sanctions, it must keep in mind that sanctions are to be used judiciously and sparingly, as we explained in *Black v. Fox Hills North Community Assoc.,* 90 Md.App. 75, 83–84, 599 A.2d 1228 (1992):

An award of costs and reasonable expenses, including attorney's fees, under Rule 1–341, where a civil action was maintained or defended in bad faith or without substantial justification, is "an extraordinary remedy, intended to reach only intentional misconduct." *Talley v.*

*Talley,* 317 Md. 428, 438, 564 A.2d 777 (1989). It is reserved for the rare and exceptional case. The rule was intended to eliminate abuses in the judicial process and not to penalize a party and/or counsel for asserting a colorable claim or defense. *Kelley v. Dowell,* 81 Md.App. 338, 567 A.2d 521 (1990); *Needle v. White, Mindel, Clarke & Hill,* 81 Md.App. 463, 568 A.2d 856 (1990); *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 539 A.2d 1173 (1988).

We further explained that sanctions under Rule 1–341 are available only when an offending party or attorney maintains a suit that

> is patently frivolous and devoid of any *colorable claim.* Rule 1–341 sanctions should be imposed only when there is a clear, serious abuse of judicial process. The rule does not apply simply because a complaint failed to state a cause of action. Nor does it apply because a party "misconceived the legal basis upon which he sought to prevail," *Hess v. Chalmers,* 33 Md.App. 541, 545, 365 A.2d 294 (1976), or urged a legal theory which was not adopted by the court. *Dixon v. DeLance,* 84 Md.App. 441, 579 A.2d 1213 (1990).

*Fox Hills,* 90 Md.App. at 84, 599 A.2d 1228 (emphasis added).

A "colorable claim," as denominated above, is that which is

> "apparently valid, but, which is in reality legally insufficient." *Black's Law Dictionary* at 248 (defining "color"). Where, then, consideration of the allegations underlying the claim and the arguments advanced in support of it reveals an apparent, or *prima facie,* cause of action, the claim withstands scrutiny under the substantial justification prong of Rule 1–341.

*Inlet,* 324 Md. at 283, 596 A.2d 1049.

In the instant case, the lower court repeatedly emphasized that it was not the filing of the Petition for Contempt that lacked substantial justification but the appellants' deci-

sion to pursue the matter by having Rosen and Webb served with the Show Cause Order. We view with considerable consternation the disturbing lack of good faith in the communications and verbal exchanges between counsel, but we are not prepared to hold that the appellants' actions constituted bad faith or lack of substantial justification as contemplated by *Inlet, Needle,* and *Fox Hills.*

■  On April 18, Rosen and Webb sent the lower court a letter stating that they believed there was neither case law nor statutory authority to support a Petition for Contempt against either a resident agent or an attorney for failure of a corporation to provide discovery. The letter also stated that their review showed that the cases cited by the appellants in their Petition did not support their position. A copy of the letter was sent to the appellants. Robinson testified that he received it on April 19th. Upon hearing the evidence, the trial court said (emphasis added):

Now, at that point Mr. Robinson, as he admits, did not have to proceed with the contempt. This contempt and court order were served by private process, and by his own testimony, or not testimony but his statement for the record, which has been acknowledged, he did not give the order to the private process server to serve these documents until April 23d, well after he had knowledge that there was a serious question by anyone about the—at least, not anyone; by at least Mr. Webb and by Mr. Rosen, of any legal authority to proceed in this matter.

You couple that with his knowledge that he had on April 16th as to the questionable status of this corporation, and if this corporation did not exist, whether or not you can have an attorney for a non-existent corporation, whether or not you can have a resident agent for a non-existent corporation, and his further concession that Mr. Webb's position as attorney of record for the corporation, if it did exist, terminated no later than December 30th or 31st, by operation of law; and even if he was the attorney of record for the corporation, the lack of authority for

holding him in contempt. This certainly arises to proceeding without substantial justification.

I do make a finding of fact that, not the filing of the petition for contempt, but that the proceeding with the petition for contempt by ordering the service of the show cause order after he had—*after he has acknowledged that he has received the letter of April 18th pointing out the lack of justification to proceed,* the lack of any legal authority to proceed—that is what brings the lack of substantial justification into play. It may very well arise to the level of bad faith, but I certainly do not have to make that decision because it is clear that there is no reason whatsoever to proceed....

■ The appellants in the case *sub judice* did not disobey the terms of a judicial directive when they pursued the Show Cause Order. Even though attorneys Rosen and Webb advised the appellants of their understanding of the law pertaining to the disputed matter, their interpretation could not be equated with a definitive ruling by the court. Hence, the appellants were not bound to adhere to the viewpoint of the opposing side after receiving the April 18, 1991 letter even though it seems evident that proceeding against the resident agent and counsel of a defunct corporation is improvident at best and raises questions regarding the proper exercise of legal judgment at worst. Hence, while we believe informal communications could have averted the service of the show cause order,[5] we believe imposi-

---

5. Although Robinson failed to demonstrate appropriate demeanor in his dealings with opposing counsel, Rosen was equally at fault in setting the tone of the exchange between the two lawyers. Robinson, in a letter to Rosen, refers to their telephone conversation which contained threats from Rosen and ended with Rosen hanging up the telephone on Robinson. Nothing in the record negates those statements. We do not believe that the clients, the bench, or the bar are well served when lawyers fail to exhibit professionalism and civility toward each other.

At oral argument, we expressed our concern for the inappropriate conduct of counsel as reflected in the correspondence as well as the nature of the litigation herein. Although we fully understand that counsel for Columbia Homes believed he was being assailed personal-

tion of sanctions was extraordinary and harsh under the circumstances of this case. Moreover, a finding that a party has not shown good faith is not the functional equivalent of a finding of bad faith. *Zdravkovich v. Bell Atl–Tricon Leasing Corp.*, 323 Md. 200, 210–11, 592 A.2d 498 (1991).

Furthermore, sanctions should be reserved "for the deterrence of unnecessary or abusive litigation." *Id.* at 209, 592 A.2d 498. As further observed by the Court of Appeals:

> The imposition of sanctions is to deter litigation that clearly lacks merit, but not to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." ... In his appellate brief, Zdravkovich indicates that one of the bases for appeal was "the propriety of granting a judgment when it is known that [a litigant's] absence is caused by his appearance in another court." This issue, in its factual context, does not lack substantial justification, and there is no allegation or basis for a finding that Zdravkovich pursued his appeal in bad faith.

*Id.* at 212, 592 A.2d 498 (citations omitted).

We cannot say that the appellants' actions rose to the level required by *Zdravkovich*. Had counsel for Art Form been put on notice that his actions in serving the show cause order were contrary to a decision of a court of competent jurisdiction, which he was bound to follow, he would have been obliged, at the very least, to research the issue of the propriety of proceeding. To countenance the court's finding that the basis for imposing sanctions was Robinson's acknowledgement "that he ha[d] received the letter of April 18 pointing out the lack of justification to proceed" would clearly result in a chilling effect on counsel

---

ly by the show cause order, dialogue between the attorneys was not furthered by hanging up the phone on counsel for Art Forms. Neither was such dialogue facilitated by threats of suit for abuse of process. Notwithstanding that we do not find sanctions appropriate in this case, we believe in an appropriate case such a finding may be compelled, in large part, based on personal motives in pursuing questionable claims against opposing counsel.

who proceed in the face of a non-specific assertion by opposing counsel that no law exists to support his (opposing counsel's) position. As we have observed, we can envision circumstances where sanctions would be appropriate where counsel act in contravention to a decision, statute, or rule of law which clearly prohibits such action. In view of the evidence before us, we hold that the lower court's finding that Robinson[6] lacked substantial justification as contemplated by Rule 1–341 to proceed with the Petition for Contempt by pursuing service of the Show Cause Order on Rosen and Webb was clearly erroneous and that the award of attorneys' fees was therefore an abuse of discretion.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.

---

6. The circuit court made no finding as to Art Form regarding the sanctions.