581 A.2d 48

**Edward A. JOHNSON**

v.

**Wallace H. BAKER, et al.**

**No. 1828, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 31, 1990.

Benjamin Lipsitz, Baltimore, for appellant.

Walter S.B. Childs, Annapolis, for appellee, Baker.

Royal G. Shannonhouse, III (Ruth G. Watson and Blumenthal, Wayson, Downs and Offutt, P.A. on the brief), Annapolis, for appellee, Blumenthal, Wayson, Downs and Offutt.

Argued before GARRITY, ALPERT and CATHELL, JJ.

ALPERT, Judge.

In this case, Edward A. Johnson (appellant) appeals from an award, made pursuant to Rule 1–341, to Wallace H. Baker (appellee) and the law firm of Blumenthal, Wayson, Downs and Offut (appellee). The lower court awarded both

parties unreimbursed expenses, including attorneys' fees, that they incurred to defend against Johnson's prior, failed appeal in a breach of contract and fraud action; it also awarded to Baker the costs he expended to compel Johnson to release a deed of trust. We shall affirm.

### Facts

Property owner John Chaney wanted to sell his land in Anne Arundel County; however, four separate mortgage liens encumbered the property. Johnson, Chaney's former attorney, was one of the lienholders. Because the interest on these liens had accumulated, a buyer would have had to pay an amount in excess of the property's market value to satisfy the debt. To rectify the problem, Baker proposed that he develop Chaney's land into residential lots which could be sold. On July 17, 1984, Johnson agreed in writing to reduce the balance due on his lien from $80,000 to $60,000. As "inducement," Baker agreed to give Johnson either: (1) the lot of his choice from a group of five lots selected by Baker or (2) $25,000. The contract gave Baker the right to decide whether he would give Johnson the land or the money. It further provided that Baker could execute the provision at any time, but not later than "the time there remain five (5) lots unsold." No lienholder was to receive more than "its agreed upon amount." A "Fourth Amendment to the Agreement of Sale," effective January 9, 1986, left these provisions substantially the same.[1]

For whatever reason, Baker chose a lot rather than allowing Johnson to do so, and recorded a deed of trust on it in Johnson's favor. Baker's attorney, a partner at Blumenthal, Wayson, Downs and Offut, notified Johnson of the error and stated that, "[m]y feeling is you are well-secured

---

1. The changes were: (1) that before Baker sold ten lots, he would grant the lienholders a recorded mortgage or deed of trust lien for $25,000 on a lot, and (2) that the mortgage or deed of trust would come due when only five lots remained unsold. At that time, Baker would give each lienholder either the deed to the lot to which his mortgage or deed of trust had attached or $25,000, without interest.

and have received the substantial equivalent since the lots are all being sold at the same price, and they have approximately the same value." He requested that Johnson contact him if Johnson still was dissatisfied so that they could agree on "a course which is satisfactory."

On July 15, 1987, Johnson responded to Baker's attorney by letter. In that letter, Johnson made a number of demands, including the demands (1) that Baker reinstate the original $80,000 mortgage and pay Johnson the outstanding principal plus interest, less the $60,000 Baker already had paid him and (2) that Baker not sell any more lots until Johnson's contract action was resolved and Baker had paid him the balance on the original mortgage.

On July 21, 1987, Johnson, acting *pro se*, filed the following complaint:

### LAW ACTION FOR BREACH OF CONTRACT AND FRAUD

Edward Johnson sues defendants for breach of contract and fraud in the transaction of the contract of sale of and settlement of the Contract of Sale dated July 17, 1984 and the Deed of Trust dated June 19, 1987. WHEREFORE YOUR PLAINTIFF SUES DEFENDANTS FOR ONE MILLION DOLLARS.

The clerk of court mailed the summons to Johnson for service by private process, but no return of service was filed within the prescribed time period. Baker and Blumenthal eventually learned of the suit and filed motions to dismiss the complaint in November 1987. Johnson's response was to file an amended complaint and to assert that the pending motions had been rendered moot. This cycle of pleading went on through Johnson's third amended complaint. Throughout this period, Johnson sent letters to both Blumenthal and Baker in which he proposed to settle the case for sums that ranged as high as $300,000 plus attorney's fees and costs.

On June 28, 1988, Baker paid to Johnson's trustee the $25,000 due to Johnson under the contract. On July 7, 1988, the trial court ultimately granted Baker and Blumenthal's motions to dismiss on Johnson's second amended complaint.[2] The court ordered Johnson to pay Blumenthal $500 in attorney's fees "because I think [the suit against Blumenthal] has been frivolous and I do not think it has any basis in law or in fact based on your allegations."

When Johnson appealed to us, we affirmed the lower court's ruling in an unreported *per curiam* opinion, *Johnson v. Baker*, No. 1160, slip op. at 9 (Md.App. Mar. 23, 1989). In May 1989, Johnson petitioned the Court of Appeals for *certiorari;* the court denied the petition because it "was filed without substantial justification in violation of Maryland Rule 1–341."

In the meantime, Blumenthal and Baker, in separate motions to the circuit court, moved for unreimbursed expenses—including attorney's fees—incurred in resisting Johnson's failed appeal. Baker also moved for costs associated with compelling Johnson to release the deed of trust.[3]

On October 13, 1989, the Circuit Court for Anne Arundel County held a hearing on Blumenthal and Baker's motions for costs and attorney's fees. The circuit court, having reviewed the record and Baker and Blumenthal's affidavits of expenses, heard each party's oral argument. The court found that "Mr. Johnson ignored precedent, was unable to give Judge Heise any support for his proposition, and even as was indicated after the payment, the twenty-five thousand was made sometime into the proceedings, pursued the appeal and failed to release the deed of trust so that it did, in fact, tie up the property while this litigation was in progress." The court concluded that Johnson "was ...

---

**2.** The court also granted Chaney's motion to dismiss. Chaney had been brought in as a party in Johnson's first amended complaint.

**3.** Johnson finally released the deed of trust on September 1, 1989 and took the $25,000 that Baker had put into Johnson's escrow account in June 1988.

purely and simply filing this claim in bad faith and without ... legal justification, and any substantial justification." The court awarded Blumenthal $15,000 plus the cost of the suit and awarded Baker attorney's fees of $5,695.78 plus the $287.50 that it cost him to obtain the deed of trust.

It is from the lower court's awards to Blumenthal and Baker that Johnson appeals to us again. Johnson raises the following issues on appeal:

 I. Whether the circuit court erred when it awarded Blumenthal and Baker attorney's fees and costs incurred in defending against Johnson's prior, failed appeal.

 II. Whether the circuit court erred in making the awards in the manner and/or the amounts in which it did.

## I.

Johnson contends that the lower court erred when it imposed sanctions in the form of awards to Blumenthal and Baker for attorney's fees and costs. He argues that his claim was at least colorable and that he had one appeal as of right after the trial judge dismissed his case. He urges us to establish a "higher threshold" for the imposition of sanctions at the appellate level than exists at the trial level.

Under the American Rule, litigants pay their own attorney's fees regardless of the lawsuit's outcome. *Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d 383, 390 (2d Cir.1985). Maryland Rule 1–341 [4] is a limited exception to that rule which is intended to prevent parties and/or their attorneys from abusing the judicial process by initiat-

---

**4.** The rule applies against any party and/or his attorney who maintains or defends a civil action in bad faith or without substantial justification in the district, circuit, and appellate courts. P. Niemeyer & L. Richards, *Maryland Rules Commentary* 39–40 (1984 & Supp. 1988).

The federal analogue to this rule in the Federal Rules of Civil Procedure is Rule 11; in the Federal Rules of Appellate Procedure, it is Rule 38.

ing or maintaining meritless actions. *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173 (1988). Rule 1–341 outlines the circumstances in which the court may require a party and/or that party's attorney to pay the adverse party's costs of litigation, including attorney's fees:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in *bad faith* or *without substantial justification* the court may require the offending party or the attorney advising the conduct or both of them to pay the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

(Emphasis added).

Thus, the award of costs and reasonable expenses is predicated by one of two circumstances: (1) conduct that amounts to bad faith or (2) conduct that lacks substantial justification. *Blanton v. Equitable Bank, Nat'l Ass'n,* 61 Md.App. 158, 162, 485 A.2d 694 (1985); *see also Yamaner v. Orkin,* 313 Md. 508, 509, 545 A.2d 1345 (1988). Although the rule's purpose is to prohibit pleading that is labeled for one purpose but in fact is filed for delay, P. Niemeyer & L. Richards, *supra,* at 40, the rule is not intended to penalize a party and/or counsel for averring colorable claims or defenses. *Yamaner,* 313 Md. at 516, 545 A.2d 1345; *see also Dent v. Simmons,* 61 Md.App. 122, 124, 485 A.2d 270 (1985).

A court must make an evidentiary finding of "bad faith" or "lack of substantial justification" before it imposes Rule 1–341 sanctions. *Legal Aid Bureau, Inc. v. Bishop's Garth Associates Ltd. Partnership,* 75 Md.App. 214, 220, 540 A.2d 1175 (1988). The existence of bad faith or lack of substantial justification is a question of fact subject to a "clearly erroneous" standard of review. *Legal Aid,* 75 Md.App. at 220–21, 540 A.2d 1175; *see also Century 1 Condominium Association, Inc. v. Plaza Condominium Joint Venture,* 64 Md.App. 107, 117, 494 A.2d 713 (1985); *But see Shanks v. Williams,* 53 Md.App. 670, 672–73, 455

A.2d 450 (1983) (applying abuse of discretion standard). Upon a finding of bad faith or lack of substantial justification, the court must decide whether to award attorney's fees and costs. *Legal Aid*, 75 Md.App. at 221, 540 A.2d 1175. On appeal, the appellate court reviews the propriety of the sanction imposed under an abuse of discretion standard and will not disturb the sanction unless the lower court abused its discretion. *Id.*

### A. *Lack of Substantial Justification*

■ As a matter of law, an action is substantially justified when the party reasonably believes that the case will generate a factual issue for the fact finder at trial. *Legal Aid*, 75 Md.App. at 223, 540 A.2d 1175. Conversely, conduct lacks substantial justification when there is no basis in law and/or in fact to support the plaintiff's claim against the defendants who seek fees and costs. *Brady v. Hartford Fire Insurance Co.*, 610 F.Supp. 735, 738 (D.Md.1985); *see also Singer v. Stevens Kokes, Inc.*, 39 Md.App. 180, 186, 384 A.2d 463 (1978). This does not mean, however, that the prevailing party is entitled to attorney's fees because the opposing party "misconceived the legal basis upon which he sought to prevail," *Hess v. Chalmers*, 33 Md.App. 541, 545, 365 A.2d 294 (1976), or that a litigant is to "be penalized for innovation or exploration beyond existing legal horizons unless such exploration is frivolous." *Dent*, 61 Md. at 128, 485 A.2d 270.

Public policy encourages innovation and advances in the law, *id.* at 128, 485 A.2d 270, but that policy may not be stretched to permit a litigant to prosecute an appeal against another when the proponent's claim is frivolous. In *Legal Aid*, we noted that

> [an] action is frivolous ... if the lawyer is unable either to make a good faith argument on the merits of the action or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

*Id.* 75 Md.App. at 221–22, 540 A.2d 1175 (quoting Comment, Maryland Lawyers' Rules of Professional Conduct Rule 3.1).

■ At the trial level, Johnson's theory of his case was that a third party may sue an attorney for advice which the attorney has given a client on a matter in which the attorney has no personal interest. When pressed by the judge, Johnson could offer no Maryland case law, nor case law from any other jurisdiction, to support that theory.[5] The judge considered Johnson's proposition a "fundamentally erratical change in the law" which would radically change the nature of attorney-client relationships and create a litigation explosion. The judge concluded that Johnson's claim was "frivolous ... [and without] any basis in law or in fact based on [Johnson's] allegations."

Our prior opinion on this case was part of the record before the circuit court judge at the sanctions hearing. In it, we explained why Johnson had no cause of action and affirmed the circuit court's dismissal of Johnson's complaint and award of attorney's fees to Blumenthal. In this appeal, Johnson still has not provided us with a viable legal theory or precedent that would justify his pursuit of his prior appeal to us. He begins by claiming that he has a "colorable claim," which clearly has no basis in fact or in law, and then contends that he was entitled to continue the action because he had one appeal as of right. He appears to assume—erroneously—that an appeal of right can legitimize and give substance to an action that is otherwise without merit.

Johnson had the opportunity to present his "colorable claim" to the trial court and to engage in "innovation or exploration beyond existing legal horizons ...," *Dent*, 61

---

5. In fact, there are cases to the contrary. *See, e.g., Kartiganer Associates, P.C. v. Town of New Windsor,* 108 A.D.2d 898, 485 N.Y.S.2d 782, 783–84 (N.Y.App.Div.1985) (attorney not liable for inducing client to breach contract with another if attorney acts on client's behalf and within scope of his authority).

Md.App. at 128, 485 A.2d 270. The circuit court judge did not impose sanctions because Johnson initiated that action. Rather, the circuit court judge imposed the sanctions only after Johnson pursued his appeal—when it had become patently apparent that he had no colorable claim or novel legal theory to support his actions. As the judge noted at the sanctions hearing: "[Y]ou [pursue a novel course of action] at your own risk when its [sic] blatantly against the outstanding statutes and case law in the case in question."

Based on the facts before us, we cannot conclude that the circuit court judge was clearly erroneous in finding that Johnson brought his action without substantial justification.

### B. *Bad Faith*

In *Needle v. White,* 81 Md.App. 463, 474, 568 A.2d 856 (1990), we noted that the Maryland appellate courts [have] not yet defined "bad faith" under Rule 1–341. Although we held in *Needle* that sanctions were improper if "the underlying action presented a colorable claim," we conceded that "a trial court has inherent power to impose sanctions for continuing an action vexatiously, wantonly, or for oppressive reasons." *Id.; see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). We went on to say that "[s]uch an action, however, requires clear evidence that the action is entirely without color and taken for other improper purposes amounting to bad faith." *Needle,* 81 Md.App. at 474, 568 A.2d 856. Previously, we had said that "[u]nder Rule 1–341, 'bad faith,' in some circumstances, may include an action taken for the purpose of causing unjustifiable delay." *Blanton,* 61 Md.App. at 163, 485 A.2d 694. Thus, "[t]he bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith ... but may be found ... in the conduct of the litigation." *Roadway Express,* 447 U.S. at 766, 100 S.Ct. at 2464. Generally, the "[m]isuse of a pleading ... amounts to bad faith." P. Niemeyer & L. Richards, *supra,* at 40.

■ Johnson's tactics during the course of this litigation strongly suggest that his underlying motives were (1) to force Baker to share his land sale profits with Johnson through the *lis pendens* effect of his action and subsequent appeals, (2) to hold hostage the deed of trust until Baker paid him additional money to which Johnson was not entitled, and (3) to pressure Blumenthal into settling for a large sum of money by extending the period of legal action indefinitely.

The chronology of facts that follows provides ample evidence of those motives.

*July 15, 1987*

Just before he filed his initial complaint, Johnson demanded that "[no] further mortgages upon lot sales" in Baker's subdivision be made, "until my breach of contract action is resolved." He further stated that "I intend to have an outstanding unreleased mortgage on all future lot sales including an outstanding lien on all those lots...." Johnson made his demands despite the fact that Baker already had paid him pursuant to the contract to release the lien that Johnson then purported to cancel.

*July 21, 1987*

Johnson filed his initial complaint.

*July 24, 1987*

Johnson indicated in letter to the parties that "I anticipate your reluctance to resolve this matter equitably and with my experience I quite naturally expect that the ensuing impass [sic] and legal action to extend over a period of two, three or four years...."

*November 13, 1987*

In his letter to Blumenthal, Johnson stated that his "consideration for my dismissing" the case is $200,000. Johnson directed that no one was to "telephone or correspond with me" unless that individual had the authority to settle the case and had "identified designated escrow monies" available for settlement. He further wrote that negotiations other than his proposed course of action would entail "ad-

vancing estimated attorneys [sic] fees over and above the settlement amount of $200,000."

*November 16, 1987*

A motion to dismiss Johnson's initial complaint was filed.

*December 8, 1987*

Johnson filed his first amended complaint.

*March 3, 1988*

A motion to dismiss Johnson's first amended complaint was filed.

*April 6, 1988*

Johnson filed his second amended complaint, praying damages from Blumenthal of $500,000 plus $1,000,000 in exemplary damages.

*April 19, 1988*

A motion to dismiss Johnson's second amended complaint was filed.

*April 22, 1988*

Johnson submitted a new demand of $300,000 plus costs and attorney's fees to Blumenthal "as consideration for dismissing" his case against the firm. He gave Blumenthal the same instructions as before—that no one was to contact him unless that person was authorized to resolve the matter with him.

*May 20, 1988*

Johnson wrote to Baker offering "settlement of all issues as against all parties: $250,000." Johnson stated that "[because] lot sales in excess of 40 will gross you a figure in excess of TWO MILLION DOLLARS ($2,000,000.00) in addition to the ONE MILLION DOLLARS ($1,000,000.00) that you already have grossed, there is certainly sufficient monies to liquidate the settlement amount of $250,000.00 plus settlement costs." He added that "a further source of settlement monies is of course you and all of the other defendants." Johnson reiterated that the amount was non-negotiable.

*June 13, 1988*

Johnson wrote to Baker after Johnson learned that Baker was "unable to sell [Baker's] property." Johnson proposed to purchase the lots at $25,000 per lot.

*June 18, 1988*

Baker paid to Johnson's trustee "$25,000 being full payment of all that Johnson was owed for a release of the deed of trust." [E. 21] Johnson responded that he might want more than the $25,000, but hadn't yet decided on a course of action.

*July 1, 1988*

Johnson filed his third amended complaint, asking again for $500,000 damages and $1,000,000 in exemplary damages against Blumenthal.

*July 7, 1988*

The trial court dismissed Johnson's action with prejudice and awarded Blumenthal attorney's fees under Rule 1–341.

*July 15, 1988*

Johnson wrote to Blumenthal that "[t]his case has continued for at least one year through the Circuit Court level, and through appeals and remand, and [with] the possibility of my filing this case in another jurisdiction this matter could continue on for another year or more. Therefore, ... I hereby renew my settlement demand [of $300,000 plus costs and attorneys' fees] as noted in my correspondence of 22 April 1988."

Johnson also refused to execute the release of the lien on Baker's lot for which Johnson had received full payment on June 18, 1988. He continued to hold the lien through his appeal to us and then to the Court of Appeals. He did not execute a release until shortly before the Rule 1–341 hearing for sanctions from which he now appeals.

These are among the facts that the circuit court judge had before him when he concluded that Johnson had acted in bad faith when he pursued his first appeal to us. Based

on the foregoing facts, we cannot say that the judge was clearly erroneous in reaching the conclusion that he did.

Johnson urges us to adopt a "higher threshold" for the imposition of sanctions at the appellate level than that which exists at the trial level. He offered no suggestion, however, as to what that higher threshold might be. The present "threshold," whether at the trial level or the appellate level, is that neither a party nor that party's counsel can bring an action in bad faith or without substantial justification. We decline the invitation to alter it.

## II.

■ Johnson contends that the circuit court judge violated his constitutional guarantees of due process when he imposed sanctions on Johnson without first affording him a full evidentiary hearing, including the opportunity to present witnesses and the opportunity for cross-examination. Johnson insists that such a hearing is necessary to determine the basis for imposing sanctions and to determine the reasonableness of any penalties that the court might decide to impose. Johnson does not question the adequacy of the notice he received with respect to the hearing.

The Fourth Circuit, in *In re Kunstler*, 914 F.2d 505 (4th Cir.1990), recently addressed the amount of due process due before a court imposes sanctions under Rule 11[6] of the

---

6. Rule 11 states, in part, that

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [ ] If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, *an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses in-

Federal Rules of Civil Procedure. In *Kunstler,* the Fourth Circuit affirmed in part and vacated in part the imposition of Rule 11 sanctions against three attorneys after a federal district court dismissed a 42 U.S.C. § 1983 action in which the attorneys represented parties who sought monetary damages and injunctive relief from certain North Carolina state and county officials and employees and others for an alleged improper state criminal prosecution and for harassment. *Id.,* at 510–11.

The attorneys in *Kunstler* contended that the lower court violated their due process rights when it imposed sanctions without holding a full evidentiary hearing. *Id.,* at 521. The Fourth Circuit looked to the Advisory Committee Note on Rule 11, 28 U.S.C. app. at 575–76 (1988) and the reasoning of *Donaldson v. Clark,* 819 F.2d 1551, 1561 (11th Cir.1987) to determine whether and to what extent a hearing is required before a court imposes sanctions.

> The Advisory Committee Note indicates some of the matters to be considered: (1) the circumstances in general; (2) the type and severity of the sanction under consideration; and (3) the judge's participation in the proceedings, the judge's knowledge of the facts, and whether there is need for further inquiry. The Advisory Committee Note observes that "[i]n many situations the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary."
>
> When an attorney has failed to present necessary factual support for claims despite several opportunities to do so, for example, further hearing on the sanctions issue may well be not only unnecessary but also a waste of judicial resources. On the other hand, when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal

---

curred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

F.R.Civ.P. 11 (emphasis added).

position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater. Prior opportunities to respond to Rule 11 charges will also influence the extent to which further hearing is necessary.

As mentioned by the Advisory Committee, the type and severity of the sanction are necessary elements in the calculus. The more serious the possible sanction both in absolute size and in relation to actual expenditures, the more process that will be due.

*Id.*, at 521–22. The Fourth Circuit further noted that the Advisory Committee Note indicated that "satellite litigation over sanctions and separate hearings should be limited to the extent possible." *Id.*, at 521 (citing F.R.Civ.P. 11 advisory committee's note).

On this basis, the court concluded that due process does not require an evidentiary hearing in every case before a court imposes sanctions, and affirmed the lower court's finding that the attorneys violated all three prongs of Rule 11. *Id.*, at 522. The Fourth Circuit noted that the federal district court which imposed the sanctions had participated in the prior proceedings, giving that court knowledge of the relevant facts even without an evidentiary hearing. *Id.* In addition, the district court had access to the pleadings, the state defendants' summary judgment motions, the county defendants' 12(b) motion as well as the affidavits and legal arguments that the court allowed the attorneys to submit; the district court also heard oral argument. *Id.* From this, the Fourth Circuit concluded that the attorneys' opportunities to respond to the charges that their complaint violated Rule 11 satisfied due process requirements.[7] *Id.*

---

**7.** Although the Fourth Circuit held that the attorneys had an adequate opportunity to contest the district court's finding that they violated Rule 11, the Fourth Circuit subsequently determined that the attorneys had not had an adequate opportunity to challenge the type and amount of the sanction imposed. *In re Kunstler*, 914 F.2d at 522 (4th

### A. *Procedural Due Process*

In Maryland, the imposition of sanctions under Rule 1–341 must be sought by motion filed in accordance with Rule 2–311. P. Niemeyer & L. Richards, *supra*, at 40. If a party requests a hearing on the motion, the court must hold a hearing if a decision on that motion would be dispositive of the claim or defense. Md. Rule 2–311(f). The parties are entitled to "adequate notice of the time, place, and nature of that hearing. . . ." *Phillips v. Venker*, 316 Md. 212, 222, 557 A.2d 1338 (1989).

Johnson requested a hearing on the Rule 1–341 motions filed against him and the court granted him the hearing. Thus, the hearing at a minimum fulfilled the procedural requirements of Rule 2–311(f).

 Constitutional due process applies to the assessment of attorney's fees for litigation misconduct. A party should be provided fair notice and an opportunity to be heard on the record. *See Roadway*, 447 U.S. at 767, 100 S.Ct. at 2464–65; *see also Needle*, 81 Md.App. at 480, 568 A.2d 856; *Talley v. Talley*, 317 Md. 428, 434–35, 564 A.2d 777 (1989).

The circuit court judge conducted Johnson's hearing in open court and heard each party's detailed recital of facts and law. The judge also reviewed the record, including: (1) Johnson's brief and reply brief, (2) the record extract in the Court of Special Appeals, and (3) Johnson's proffer of certain facts, which proffer stood without objection by appellees. Thus, the judge awarded attorney's fees and costs to Baker and Blumenthal based on the facts in the record and the parties' oral arguments.

Despite this, Johnson still argues that due process required that he be afforded a "full evidentiary hearing" with the opportunity to present witnesses and the opportunity for cross-examination.

Cir.1990). We shall discuss that part of the court's opinion in section B, *infra*.

Because due process is a flexible concept, it calls only for those procedural protections that the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (quoted with approval in *Phillips,* 316 Md. at 218, 557 A.2d 1338). In determining the procedural protections that are due in a given situation, the judge must consider three distinct factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Johnson has an interest in having the court impose a sanction only if it is justified. As we have already noted, Johnson was afforded fair notice and a hearing on the record. The risk that the circuit court judge erroneously deprived Johnson of his interest in a fair and proper determination because he permitted only oral argument from the parties rather than presentation of witnesses and cross-examination seems minimal. The court had the record of the case before it. Other than the proffer,[8] Johnson offered no new evidence at oral argument to demonstrate that there was a basis to his action in law or in fact or that there was a purpose to it other than harassment or coercion; he has yet to show how the record before the lower court was inadequate for a fair determination of the issues before that court. As to the need for witness testimony or cross-examination to establish the amount of the sanction, the court noted that "you're [not] going to have anymore than what's

---

**8.** The proffer was to show that the selection of the lots was of some significance to both Mr. Johnson and Mr. Chaney.

shown here in [Blumenthal's] bill in the evidentiary hearing."

Johnson argued, both at trial and before us, about the right to cross-examine with respect to "what they're claiming," including the amount of counsel fees, but has yet to proffer or suggest specifically in which regard the fees were not fair, reasonable and necessary or that the record, as argued, was incorrect. This is not a case in which prevailing counsel suggested a fee and the trial court perfunctorily adopted it. The bill for attorneys' fees is set out in great detail. "Because the record itself discloses the nature of the proceedings, it is some evidence of the extent of the attorney's efforts. Given this evidence, the [judge] may rely upon his own knowledge and experience in appraising the value of an attorney's services." *Foster v. Foster*, 33 Md.App. 73, 77, 364 A.2d 65 (1976). *See also Brady v. Hartford Fire Ins. Co.*, 610 F.Supp. 735, 741 (D.Md.1985). The right to cross-examination "does not require full judicialization" in every instance. *See* B. Schwartz, *Administrative Law* § 88, at 247 (1976).

Finally, the courts have an interest in the efficient use of the judicial system and the fiscal and administrative burdens that additional procedural requirements would entail. The purpose of Rule 1–341 is to discourage meritless suits that otherwise would further burden an already overloaded judicial system. To grant Johnson's request would prolong an action that already has continued too long and would use even more of the judicial system's limited resources. That seems counter to the purpose of the rule and to common sense.

Although Johnson complains about the lack of an evidentiary hearing, we point out that the record before the court was replete with evidence and well supplemented by argument. With the entire record before it, the trial court could and obviously did rely on its own knowledge and experience in evaluating the justification of Johnson's appeal. We hold that the circuit court judge did not violate Johnson's due process rights.

## B. *Abuse of Discretion*

Once the court has determined the existence of bad faith or lack of substantial justification under Rule 1–341, the rule is permissive as to the imposition of sanctions, *i.e.*, the court has the discretion to impose sanctions as long as they are reasonable. *Blanton*, 61 Md.App. at 166, 485 A.2d 694. On appeal, we will not disturb the sanctions unless the lower court abused its discretion.

In *In re Kunstler, supra*, 914 F.2d at 522, the Fourth Circuit found that the district court had not given the attorneys an adequate opportunity to respond to the type and amount of the sanction, particularly because it was a large monetary sanction. The amount of the sanction largely was the result of fee statements that opposing counsel submitted, and which the attorneys had no opportunity to contest. *Id.*, at 522.

The Fourth Circuit noted that the primary purpose of Rule 11 is to deter litigation abuse. *Id.* Thus, courts should impose the least severe sanction that still serves Rule 11's deterrent purpose, but should not use the rule merely to shift fees. *Id.* The lower court erred because it assumed that '[t]he first purpose of sanctions under Rule 11 is to compensate the offended parties' and improperly focused on providing 'compensatory sanctions' when it established the amount of the sanction. *Id.*, at 522.

The Fourth Circuit then outlined four factors, which the Tenth Circuit recently enumerated in *White v. General Motors Corp.*, 908 F.2d 675 (10th Cir.1990), that a district court should consider in formulating the amount of a sanction: "(1) the reasonableness of the opposing party's attorney's fees;[9] (2) the minimum to deter;[10] (3) the ability to

---

**9.** 1. Reasonableness (lodestar) calculation. Because the sanction is generally to pay the opposing party's "reasonable expenses ... including a reasonable attorney's fee," Fed.R.Civ.P. 11, incurred because of the improper behavior, determination of this amount is the usual first step. The plain language of the rule requires that the court independently analyze the reasonableness of the requested

pay; [11] and (4) factors related to the severity of the Rule 11 violation." [12] *Id.*, at 523.

---

fees and expenses. The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. In evaluating the reasonableness of the fee request, the district court should consider that the very frivolousness of the claim is what justifies the sanctions.

*In re Kunstler,* 914 F.2d at 522–23 (4th Cir.1990) (quoting *White,* 908 F.2d at 684 (10th Cir.1990) (citations omitted)).

10. 2. Minimum to deter. As we have already stated, the primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit. It is particularly inappropriate to use sanctions as a means of driving certain attorneys out of practice. Such decisions are properly made by those charged with handling attorney disbarment and are generally accompanied by specific due process provisions to protect the rights of the attorney in question. . . . [T]he amount of sanctions is appropriate only when it is the 'minimum that will serve to adequately deter the undesirable behavior.' . . . Thus, the limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer.

*In re Kunstler,* 914 F.2d at 524 (4th Cir.1990) (quoting *White,* 908 F.2d at 684–85 (10th Cir.1990) (citations omitted)).

11. 3. Ability to pay. The offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct. Because of their deterrent purpose, Rule 11 sanctions are analogous to punitive damages. It is hornbook law that the financial condition of the offender is an appropriate consideration in the determination of punitive damages. . . . Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status.

*In re Kunstler,* 914 F.2d at 524 (4th Cir.1990) (quoting *White,* 908 F.2d at 685 (10th Cir.1990) (citations omitted)).

12. 4. Other factors. In addition, the court may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances. *See* [American Bar Association, Standards and Guidelines for Practice Under Rule 11 of the *Federal Rules of Civil Procedure* (1988), reprinted in 5 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, 212, 236–37 (Supp.1989) ].

*In re Kunstler,* 914 F.2d at 524–25 (4th Cir.1990) (quoting *White,* 908 F.2d at 685 (10th Cir.1990)).

Thus, the Fourth Circuit vacated the sanction imposed for two reasons: (1) it was based on improper considerations and (2) the size of the sanction required that the offending party have the opportunity to respond to the fee statements underlying the sanction. *Id.*, at 525. The court remanded the case and instructed the district court to consider the four factors before determining the sanction it would impose. *Id.*

Although primarily purposed to "deter attorney and litigant misconduct," Maryland Rule 1–341, in contrast to Federal Rule 11, places great importance upon compensation as the primary deterrent. Rule 1–341 does not mention the word "sanction" but provides instead that "the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and reasonable expenses, including attorney's fees...." Because Rule 1–341 is compensatory as well as punitive in nature, the Fourth Circuit's four factors may be considered, but certainly are not obligatory, when we formulate an award under Rule 1–341.

In the past, Maryland courts often have determined the amounts awarded under Rule 1–341 based on "[their] own knowledge of the case and the legal effort and expertise required" and the affidavits submitted by counsel. *Century 1 Condominium,* 64 Md.App. at 121–22, 494 A.2d 713; *Blanton,* 61 Md.App. at 167, 485 A.2d 694; *see also Sharp v. Sharp,* 58 Md.App. 386, 406, 473 A.2d 499 (1984) ("attorney's fees awarded in divorce case according to factors of labor, skill, time, and benefit").

■ In this case, the circuit court judge had before him the record of the case, and Baker and Blumenthal's affidavits of itemized attorney's fees, and expenses. The judge awarded Baker the amounts that he requested in his affidavit. The judge believed, however, that the hourly rate which Blumenthal submitted for its attorneys' time was "a little high for this area." Rather than award Blumenthal

**544**

the $23,000 in attorneys' fees the firm requested in the affidavit, the judge instead awarded the firm $15,000.

The circuit court judge was familiar with the case from his review of the record. He was able to evaluate the efforts made by counsel, as well as their expertise, not only from the record, but also from their oral arguments before him. The judge evaluated Baker & Blumenthal's affidavits of costs and reduced the amount of the attorneys' fees that he awarded to Blumenthal to make them commensurate with the hourly rates he believed were generally charged for attorney's services in this area. We hold that the circuit court judge did not abuse his discretion either in his decision to impose sanctions or in the amount of the sanctions that he ultimately decided to impose on Johnson.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.